W. J. JOHNSON, Appellee, v. HOME MUTUAL INSURANCE ASSO-
CIATION, Appellant.

INSURANCE:  Policy in Conflict With Application.  A duly accepted
1  and approved application for insurance for a specified time, with
payment of the premium, effects insurance in accordance with the
application, notwithstanding the subsequent issuance, without the
knowledge of the insured, of a policy in conflict with the applica-
tion.  So held where the application was for insurance against
"theft" generally, and the policy exempted the insurer from lia-
bility, should the theft occur in a named city.

INSURANCE:  Allowable Scope of By-Laws.  Principle reaffirmed that
2  an agreement by the insured to be bound by subsequently enacted
by-laws does not arm the insurer with power to *essentially* change
his contract obligation.

TRIAL:  Method of Trial—Law or Equity—Waiver.  It matters little
3  that plaintiff is on the equity side of the calendar, if the court has
jurisdiction of the parties and subject-matter, and defendant does
not complain that he is on the wrong side of the calendar.

*Appeal from Mills District Court.*—THOMAS ARTHUR, Judge.

FEBRUARY 9, 1921.

REHEARING DENIED MAY 10, 1921.

ACTION·in equity to reform a contract of insurance made with the defendant company to recover indemnity for the loss of an automobile by theft. Trial to the court and decree as prayed, and the defendant appeals.—*Affirmed.*

*Holly & Holly* and *Genung & Genung,* for appellant.

*Frank E. Northrop* and *W. S. Lewis,* for appellee.

WEAVER, J.—I. On January 8, 1918, plaintiff applied to the defendant for insurance upon a Buick automobile against loss or damage by fire, lightning, theft, tornado, and wind storms, and then and there paid defendant's agent taking such application, the premium demanded. By the terms of the application, the insurance was to be effective in several named states, including the states of Iowa and Nebraska. It also contained a provision that the insurance should not take effect until approved by the secretary of the association, though the application expressly provides for insurance for one year from noon of the 8th day of January, 1918. The agent forwarded the application to the secretary, and it·was indorsed as approved by the latter, under date of January 14, 1918. Some days later, the association issued its policy to the plaintiff, and sent it to their local agent, who held it for the plaintiff until after the loss of the car by theft. On January 24, 1918, the plaintiff drove the car to Omaha, Nebraska, where it was stolen. The loss was duly reported to the defendant, which refused to pay the promised indemnity, on the ground that, by the terms of the policy, the insurance did not cover loss by theft in certain named cities, including in such list the city of Omaha. No such exemption or exception was to be found in the application made by the plaintiff; but, on the contrary, it provided insurance

*Marginal note:* 1. INSURANCE: policy in conflict with application.

wherever loss occurred in the state of Nebraska or elsewhere in the states named in the contract. An examination of the policy, however, revealed such a clause in the purported copy of the application embodied therein. The discrepancy is accounted for as follows:

On the date when the application was made, the association was, in fact, insuring auto cars against theft throughout the state of Nebraska, including the city of Omaha; but between that date and the issuance of the policy it adopted an amendment to its by-laws, declaring that "theft insurance under any policy shall stand suspended, and the association will pay no theft loss when the car is left standing unattended on the streets, in the parks, or other public places in any of the following towns," including in such list Omaha, Nebraska. In writing up the plaintiff's policy, defendant, without notice to the plaintiff and without authority from him, included this provision in the alleged copy of the application. Plaintiff had no knowledge of this attempt to modify his insurance and limit or restrict defendant's liability thereon, until after his car was stolen and proofs of his loss had been made. The local agent who took the application had no notice or knowledge that any such change was contemplated, and knew nothing of it until defendant repudiated its liability to the plaintiff. It should also be said in this connection that not until January 18, 1918, one day after plaintiff's application was approved, did the defendant send out instructions to its agents to use the new form of application and destroy the old ones.

Defendant does not deny the truth of these statements, but asserts its right to defend because of a provision in the application that the applicant agrees to be "governed by the articles of incorporation and by-laws now in force or hereafter made by the association," and argues that the legal effect of this provision is to make the amended by-law a part of the insurance contract. The trial court refused to sustain the defense, and granted plaintiff the relief demanded.

We are satisfied that the court was entirely correct in so ruling. When the application was made, the defendant was carrying on the business of automobile insurance against theft in 13 different states, including Iowa and Nebraska, without

any exception or restriction as to losses occurring in any of the cities or towns in such territory. The application was made for such insurance for the year beginning at noon on the 8th day of January, 1918, and the premium for that period was admittedly paid to and received by the defendant. When that application was approved, a few days later, the insurance contract was complete as of January 8th, and the policy issued thereon

2. INSURANCE: allowable scope of by-laws.

was made to bear that date. The provision in the application pledging the plaintiff to be "governed by the articles of incorporation and by-laws of the association now in force or hereafter made" vests the association with no power or authority to make any essential change in its contract obligation to pay losses occurring during the life of the policy. *Olson v. Woodmen of America*, 182 Iowa 1018.

The application was presented to the defendant at a time when it was offering insurance on the terms therein expressed, and it was for such insurance that it demanded and received the stated premium, for one year from noon of the 8th day of January, 1918. The application in that form was approved by the secretary, and by its terms the insurance thus applied for and paid for became effective, constituting a contract which neither party could change without the consent of the other. The insertion of the restrictive clause in the pretended copy of the application embodied in the policy thereafter issued was a wrongful act, and plaintiff was justified in repudiating it and insisting upon payment of the insurance in accordance with the agreement.

If the defendant, after taking this application and before its approval, decided to change its plan of insurance and restrict its liability in certain cases, it had only to disapprove such application, or to notify the plaintiff that it could not be accepted, save upon his consent to accept the insurance with the proposed restrictions. It could not legally retain the premium and force upon plaintiff a contract to which he had not agreed, and of which he had no knowledge.

Counsel for appellant say that there was a delivery of the policy containing the restriction, and that it thereby became of binding force. Even if the parties had contemplated insur-

ance which was to become effective only on delivery of the policy, that fact alone would be no answer to plaintiff's claim that the restrictive clause was inserted therein without his authority or consent; and he could rightfully repudiate it, if he did so promptly, or within reasonable time after discovery of the fraud practiced upon him. Moreover, by the terms of the agreement, the insurance was to take effect when the secretary indorsed the application with his approval. This he did on January 14, 1918, the formal writing of the policy being left for some later date, at the convenience of the defendant. Had the policy never been issued, the plaintiff's right to recover his insurance would still have been perfect. Indeed, counsel himself says:

"Defendant does not deny plaintiff's claim that his application, having been duly approved, constitutes the true agreement of the parties, and hence there is no basis for the estoppel which plaintiff seeks to effect."

Such being the concession, it is unnecessary to further pursue this line of argument.

II. It is further argued that there was neither plea nor proof of fraud or mutual mistake on which to found a decree reforming the contract, and that, because of this lack, the court was without jurisdiction to entertain the action.

3. TRIAL: method of trial: law or equity: waiver.

It is probably doubtful if, under the facts as pleaded and proved by plaintiff, there was any necessity for demanding a reformation of the contract, or other equitable relief; but, even if this be so, it does not serve to oust the court of its jurisdiction. The petition does state facts which constitute a cause of action. It alleges an insurance contract with the defendant for insurance on his automobile, the loss to the plaintiff, and defendant's refusal to pay the indemnity. If this be true, the law will afford him a remedy. Whether this remedy should be sought in equity or at law is now immaterial. Under our system of practice, a mistake in this respect does not go to the jurisdiction of the court, but may be made the ground of a motion to transfer the cause to the proper docket. No motion being made, the error, if any, is waived.

Upon its merits, the case is too clear to justify prolonged discussion. It was fairly tried, and the trial court reached the

only conclusion that was reasonably possible, under the admitted facts. The judgment appealed from is—*Affirmed.*

   Evans, C. J., Preston and De Graff, JJ., concur.

   Arthur, J., takes no part.