M. S. SMITH, Appellant, v. WATERLOO, CEDAR FALLS & NORTH-
ERN RAILWAY COMPANY, Appellee.

**APPEAL AND ERROR:** Waiver—Trial on Unstricken Portion of Peti-
tion. Error, duly excepted to, in sustaining a motion to strike por-
tions of a petition, is not waived by the fact that plaintiff, *without
amending* as to the stricken matter, proceeds to trial on the un-
stricken portions of his petition.

**ACTIONS:** Joinder—Purely Equitable With Purely Legal. In an action
for the cancellation of a written contract whereby plaintiff donated
a strip of ground in order to widen a highway, and waived damages
because of the location and operation of a railway in· said highway,
allegations of a cause of action for damages resulting from such
occupancy and operation are properly stricken, as an attempt to join
a purely law action with a purely equitable action. Such a pleading
may not be justified on the principle that equity, having acquired
jurisdiction, will retain it and award damages, if necessary.

**JUDGMENT:** Default—Discretion to Refuse. It is not an abuse of
discretion for the court to permit defendant to file a general de-
nial some two years after the commencement of the action, and
after the cause has been fully tried and submitted, it appearing
that the cause was tried on counsel's promise to file such an an-
swer, and that no one had been injured by the delay.

**FRAUD:** Acts Constituting—Nonmateriality of Representation. A
landowner who has entered into a written contract obligating him-
self to donate a railway right of way without claim for damages
may not have a decree of rescission on the ground that, when he
executed the contract, it was *falsely* represented to him that other
landowners living several miles distant, and differently situated
from complainant, had executed the same kind of a contract.

**FRAUD:** Acts Constituting—Promises. *Promises* as to what will be
done in the future cannot be made the basis for the cancellation of
a contract fairly entered into. So held where cancellation of a con-
tract for the donation of a railway right of way was sought because
of a breach of a promise as to the manner in which the track should
be constructed and the trains operated.

*Appeal from Linn District Court.*—F. O. ELLISON, Judge.

MAY 12, 1921.

ACTION to cancel a certain contract on the ground of fraud and false representations, and for damages. A decree was entered, dismissing plaintiff's petition, and plaintiff appeals.—*Affirmed.*

*Rickel & Dennis,* for appellant.

*John A. Reed* and *Barnes & Chamberlain,* for appellee.

FAVILLE, J.—The appellant is the owner of a three-acre tract of land in Cold Stream Farm Addition to the city of Cedar Rapids, Iowa. The appellee operates an interurban railway. In 1913, the appellee was about to construct its railway in the vicinity of the city of Cedar Rapids. It desired to lay its tracks along a certain private road, which is now known and designated as "Madison Street," and which highway was adjacent to the appellant's property. The appellee desired to secure from the owners of real estate lying adjacent to Madison Street an agreement for a widening of said street from 40 to 60 feet and a waiver of any claim for damages ·for the laying of its tracks and the operation of its line along said street. Through ·an agent, the appellee secured from the appellant and others who were owners of property abutting upon said street a written instrument by which they agreed to convey .to the public for street and highway purposes 10 feet in width from their respective lots, to enable the appellee to construct and maintain its tracks in said Madison Street; and also by said instrument the said parties waived all damages which they might suffer by reason of the construction of railway tracks in said street. Thereafter, the appellee constructed its railway tracks along said street and continued to maintain the same and to operate its railway thereon. This action was brought by the appellant to obtain a cancellation of the said contract, on the ground that the same was obtained by fraud and misrepresentation on the part of the agent of the appellee. Appellant, in his petition, also prayed for damages suffered by reason of the construction and maintenance of said railway tracks and the operation of the appellee's cars over the same.

I. The first question for our consideration upon this appeal is one of practice. The appellant's petition charged the

procuring of the contract referred to, and that the same was obtained by fraud, misrepresentation, and deceit. In separate paragraphs of the petition, the appellant alleged that he had suffered damages in various ways. In one paragraph, it is alleged that the agent of the appellee, at the time of procuring the contract, promised the appellant that the tracks of the appellee, when constructed, would be ballasted level with the top of the rails, and it was alleged that the appellee had failed so to do, and that appellant had been caused inconveniences and had suffered damages thereby. In another paragraph, it was alleged that the agent of the appellee, at said time, promised the appellant that the railway company would stop its cars and take on passengers along Madison Street, and that the company did not do so. It was also alleged that, by reason of the operation of appellee's locomotive engines along said line, the appellant and his family were unable to sleep and get proper rest; that the cars were operated in a reckless, careless, and dangerous manner; that, in ballasting said road, the ballast was distributed in a reckless and careless manner, and appellant's house was injured because thereof; and that the appellee, without authority, had operated locomotive steam engines and freight trains along said street. Because of these matters, the appellant prayed an award in damages. On motion of the appellee, the paragraphs of the appellant's petition setting up these matters were stricken, and thereafter the parties proceeded to trial.

1. APPEAL AND ERROR: waiver: trial on unstricken portion of petition.

The appellant now urges that the court erred in sustaining the appellee's motion to strike from the appellant's petition the paragraphs containing the allegations in respect to the aforesaid matters. In behalf of the appellee, it is urged that the appellant, having proceeded to trial after the motion to strike from his petition had been sustained, waived the error, if any there were, in the sustaining of the said motion to strike.

We have repeatedly held that, upon a ruling on a motion or a demurrer, if the party against whom the ruling was entered afterwards pleads over or otherwise waives the adverse ruling, he cannot urge the same as error upon appeal. *Warren v. Scott,* 32 Iowa 22; *Coakley v. McCarty,* 34 Iowa 105; *Denby v. Fie,*

106 Iowa 299; *Hunn v. Ashton,* 121 Iowa 265; *Mann v. Taylor,* 78 Iowa 355; *Heiman v. Felder,* 178 Iowa 740; *Northwestern Trad. Co. v. Western L. S. Ins. Co.,* 180 Iowa 878; *Crow v. Casady,* 192 Iowa —.

It is urged that this rule applies in the instant case, and that the appellant, by proceeding to trial after the motion to strike portions of his petition had been sustained, waived any error in the ruling on said motion, and cannot now be heard to complain thereof. We do not think that, by proceeding to trial upon his petition, without amending, after the motion to strike portions thereof had been sustained, the appellant waived his right to urge the alleged error in the sustaining of said motion, upon appeal from final judgment. It appears that proper exceptions were preserved by the appellant to the ruling on the motion to strike from the petition. He filed no amendment thereafter, but saved his exception to said ruling, and proceeded to trial upon the issues that remained in his petition. By so doing, he does not estop himself from urging the alleged error in the ruling on said motion. In *Jones v. Chicago & N. W. R. Co.,* 36 Iowa 68, we said:

"The appeal was taken within six months from the date of the final judgment, and properly brings up for review all questions properly saved by exception and not waived by pleading or otherwise."

See, also, *Schoenhofen Brew. Co. v. Giffey,* 162 Iowa 204.

In *State v. Des Moines City R. Co.,* 135 Iowa 694, we said:

"It is certainly not the policy of the law to permit either party to a controversy to prolong litigation and embarrass the course of justice by prosecuting an appeal from every interlocutory ruling of the trial court. *Bank v. Dutcher,* 128 Iowa 425. Ordinarily, every substantial right of the parties can be effectually protected by preserving a proper record and presenting the questions thus saved upon appeal from final judgment."

See, also, *Northwestern Trad. Co. v. Western L. S. Ins. Co.,* 180 Iowa 878, and *McClurg & Walker v. McEvoy,* 188 Iowa 752.

The situation is altogether different from one where a party pleads over, or in any other manner acquiesces in the ruling, or

estops himself from claiming error. We hold that the appellant did not lose the right to a review of the ruling on the appellee's motion to strike from his petition by proceeding to trial thereafter, where he filed no amendment to his petition relative to the subject-matter stricken, nor otherwise waived the right to urge the alleged error on appeal.

II.  Was the ruling erroneous, however? As before stated, the appellant's action was brought in equity, for the purpose of obtaining a cancellation of the written contract procured from him by the agent of the appellee. The matters alleged in appellant's petition, which were stricken therefrom on the appellee's motion, were not germane to the main cause of action pleaded by

2. ACTIONS: joinder: purely equitable with purely legal.

the appellant. We have heretofore set out the general character of the matters pleaded by those portions of appellant's petition which were stricken, and because of which damages were asked. In so far as the stricken portion pleaded a cause of action, it was in law. By tendering these issues, the appellant sought to recover damages which he claims to have suffered by reason of the appellee's occupying the street adjacent to his premises, the general character of the damages being because of the failure to ballast the street, because of the operation of cars in a reckless and dangerous manner, and because of the operation of steam cars thereon, without a right so to do. It is obvious that all of the issues tendered by these paragraphs of the appellant's petition were purely law issues, and, in a proper case, triable to a jury.

The appellant brought this action for the purpose of obtaining a cancellation of a written contract, which action was solely cognizable in a court of equity. In his petition he joined with this equitable action certain paragraphs in which he sought to recover damages for alleged injuries that were recoverable in an action at law. Under our practice, actions in equity and at law, even though between the same parties, cannot be joined in the same proceeding. Code Section 3545 expressly provides that causes of action between the same parties may be joined, "where each may be prosecuted by the same kind of proceedings;" but it is obvious that an action in equity cannot be joined with an action at law in the same cause. Such is the

plain purport of the statute, and such have been our repeated holdings. *Stevens v. Chance,* 47 Iowa 602; *Faivre v. Gillman,* 84 Iowa 573; *Faville v. Lloyd,* 140 Iowa 501; *Prader v. National Acc. Assn.,* 107 Iowa 431. As sustaining our conclusion, under somewhat similar facts, see *Bowman v. Chicago, St. P. & K. C. R. Co.,* 86 Iowa 490.

It is urged, however, in behalf of the appellant that a court of equity, having properly acquired jurisdiction of the case, will retain it and award damages, if necessary, in order to effectuate full justice between the parties. Such a general rule, while applicable under certain instances and conditions, cannot be made applicable to such a situation as we have in the instant case. This rule is not recognized and enforced where the plaintiff in a case seeks to recover on two distinct causes of action, one in equity and the other at law. The rule is applied in cases where the equities alleged in the petition are proven and established, but for some reason it is impracticable or impossible to fully effectuate the specific remedies sought by the equitable proceeding; and in such instances, with the equities once established, a court of equity can make proper award, to effectuate justice. *Renkin v. Hill,* 49 Iowa 270; *Hosleton v. Dickinson,* 51 Iowa 244; *Clinton v. Shugart,* 126 Iowa 179; *Johnson v. Carter,* 143 Iowa 95. But such general rule has no application in a case where the equities have failed to be established, or in a case where a party seeks to join with the equitable action a separate and distinct action at law. *Fisher v. Trumbauer & Smith,* 160 Iowa 255. Code Section 3547 provides that:

"The court, at any time before the answer is filed, upon motion of the defendant, shall strike out of the petition any cause or causes of action improperly joined with others."

The appellee's motion to strike was timely, and the action of the court in sustaining the same was proper.

III. It is urged that the court erred in overruling appellant's motion for default because of appellee's failure to file answer. It must be conceded that this case is a rather striking illustration of the "law's delay." The appellant filed his amended and substituted petition in the case on November 23, 1914. On the same

3. JUDGMENT: default: discretion to refuse.

day, the appellee filed a motion to strike certain portions of said petition, which was sustained. It appears that the court was ready to proceed with the trial of the cause, and stated that he preferred to wait until the issues were fully settled. Appellee's counsel then stated of record that he would thereafter file answer, which would be in the nature of a general denial. Under these circumstances, the evidence in the case was received, but not concluded, when court adjourned, and the trial of the cause was not resumed until seven months afterwards. The evidence was finally closed and the cause submitted to the court on the 29th day of June, 1915. Nothing further appears to have been done in the case; and, no decision having been rendered, on the 10th day of August, 1916, the appellant filed his motion for default for failure to file answer. Thereafter, on November 16, 1916, the appellee filed an answer, which was, in effect, a general denial. On November 24, 1916, the motion for default was overruled, and appellant urges that this was error.

It will be noticed that, at the time of the trial, no order of court was entered, granting the appellee any specific time in which to file answer. It appears that counsel for appellee dictated a statement in the record that he would file answer thereafter, which would be a general denial; and with this understanding, the court proceeded to hear the evidence.

Under all of the circumstances, there was no abuse of discretion on the part of the trial court in overruling the appellant's motion for default for failure to file answer more promptly. No prejudice whatever resulted to the appellant from the failure to file the answer sooner, and the answer complied with the statement of counsel at the time, that it would be, in effect, a general denial. It is always advisable that the issues should be fully settled and determined before the commencement of the trial of any action. Failure so to do leads to oversight and neglect that should not be encouraged, but we do not find such abuse of discretion here as would justify interference on our part.

The appellant filed a motion to strike the answer of the appellee, after the same was filed, which motion was overruled, and error is predicated thereon. This was also a matter within

the discretion of the trial court, and there was no abuse of that discretion.

After the case had been submitted, and before it was decided by the trial court, the appellant made application to the court for leave to offer further testimony. The testimony so offered was cumulative in its character, and there was no error in denying the appellant's application for leave to introduce it, under the circumstances disclosed.

Error is also predicated on the refusal of the court to strike from the record certain testimony in regard to value. The case was tried in equity, and it is not the practice of trial courts in this state to rule upon the admission and exclusion of testimony, or upon motions to strike testimony from the record in such cases. In any event, there was no error in the ruling of which complaint is made.

IV. The appellant's main contention is predicated upon alleged error of the court in refusing to grant the relief prayed, by way of cancellation of the contract referred to, because of the alleged fraud in procuring the same.

4. FRAUD: acts constituting: nonmateriality of representation.

The instrument which is sought to be canceled by this proceeding recited that, in consideration of the benefits to be derived from the widening of Madison Street and the location of appellee's railway along and upon said street, the owners of property abutting upon said street agreed to convey to the public for street and highway purposes the front 10 feet in width of their respective lots, for the purpose of increasing the width of the street from 40 to 60 feet, to enable the railway tracks to be located and operated along said street in front of said property; and that said landowners waived all damages occasioned by reason of the construction, use, and operation of the railway along said street. The street which it was proposed to widen was a private highway that had never been dedicated to the public, and the owners of land abutting thereon owned to the center of said street. The instrument was signed by 12 of said landowners and their respective spouses, all of said signatures having been apparently obtained on the same day. The evidence shows that the appellant first met the appellee's agent on a railroad train, *en route* to Waterloo, and began conversation with him, inquir-

ing in respect to the location of appellee's railway. Shortly after this, the agent and the appellee's chief engineer called on the appellant at his home. About three weeks later, the agent again called at appellant's home, and had with him the contract in question. There was considerable discussion as to the location of the right of way of the railway. Various routes were discussed, including one in the rear of the appellant's place, instead of the one down Madison Street. As the outcome of the conversation with the agent at this time, the appellant and his wife signed the contract in question, to which the appellee's agent attached his notarial seal and a purported acknowledgment by the appellant and his wife and the other signers, and caused the same to be filed of record.

The claim of the appellant to a cancellation of said instrument is based upon the alleged false and fraudulent representations and promises made by the appellee's agent at the time that the appellant signed said instrument. The general character of the said representations is that the appellee's agent at said time represented to the appellant and his wife that the instrument which he wished them to sign was only for the purpose of showing their willingness to give a free right of way; that it was only preliminary, and that it would not be used at all; that it was merely to show to the officers of the company that the landowners were willing to grant a right of way; and that the same was never acknowledged.

It is further claimed that, at said time, said agent falsely represented to the appellant that other landowners near Louisa had agreed with the company to grant a right of way across their premises, free of charge. It is also the claim of the appellant that, at said time, the appellee's agent made certain promises to the appellant in regard to the construction and operation of the railway, to the effect that no steam locomotives would be run upon the track in front of his premises, and that said railway track would be ballasted even with the top of the rails, so that they could be crossed conveniently, and that there would be local service from the north line of Madison Street to Cedar Rapids at a five-cent rate.

The foregoing is the substance of the claims made by the appellant, and he offered testimony to substantiate said claims,

and also tending to show that the representations were false. It is not our custom, in cases of this kind, to set out the testimony bearing upon the issues at length. *Latta v. Coffeen,* 140 Iowa 515.

In the instant case, there was a decided conflict in the evidence in regard to the representations and promises that were made at the time of the execution of the contract. The trial court had the advantage of seeing the witnesses upon the trial. It is very evident from the record that the appellant was interested in securing the location of the appellee's right of way along the line of Madison Street. He first approached the agent of the appellee in regard to the matter, and interested himself in the project to the extent of going with the agent to secure from other landowners their consent to the widening of Madison Street and the location of the railway track along said street. The evidence shows that he was a man of intelligence and business experience. He testified that, at the time he signed the written instrument, the agent read it to him, and the agent testified that the appellant read it over three or four times before he signed it. There is also evidence tending to show that the appellant understood that, after signing this instrument, he would be expected to make a deed dedicating the street to the public. There is no claim that there was any fraud committed upon the appellant in regard to the contents of the contract which he signed. The chief contention of the appellant is the claim that the agent of the company falsely told the appellant, at the time, that other landowners had agreed to donate a strip of their land and consent to the location of a railway right of way, without any claim for damages. We are cited to our holdings, and those of other courts, in cases where a subscription to stock in a corporation is obtained by the false representation that other parties, known to the subscribers, have also subscribed for stock.

*Coles v. Kennedy,* 81 Iowa 360, was decided in 1890. It revealed a form of transaction which is popularly supposed to be of more frequent occurrence in these modern times. A subscription to stock in a mine in Arizona was obtained on the representation, among others, that a man well known in the community as a man of large business experience and capacity,

and a successful business man, had subscribed for 5,000 shares of said stock, and that he had or was to pay for the same. In fact, the said party was to have his stock free of charge, and it was given to him to secure the influence of his name in procuring the subscription of others. The fact that he was not to pay for his stock was concealed, and to have disclosed it would have defeated the very purpose for which the shares had been given to him. We held that, under the circumstances disclosed, this constituted fraud upon the other subscribers.

We are cited to *State Bank of Ind. v. Cook*, 125 Iowa 111, where a similar situation was disclosed, and we held that, it being a law action, the jury would have been justified in finding that the representation amounted to fraud.

To like effect, see *Cox v. Kline*, 147 Iowa 353; *Higbee v. Trumbauer*, 112 Iowa 74; *Hubbard v. Weare*, 79 Iowa 678; *Hinkley v. Sac O. & P. L. Co.*, 132 Iowa 396.

We think that this line of cases is distinguishable from the case at bar. A representation that a man of means, well known to the party solicited, has already subscribed and paid for stock in a corporation is a material representation of a fact, which, if false, may be the basis of an action for relief on the ground of fraud. The joint subscribers to stock in a corporation are associated together in a mutual enterprise for their common good, and the personnel of the subscribers so mutually associated together, their reputation and judgment, are materially important considerations. Likewise, where a signature to a note is obtained, the same considerations have even greater weight.

It is an elementary proposition that, before a court will cancel a contract on the ground that it was obtained by false representations, it must first be shown that the representations claimed to have been false were made in respect to a material matter. In the instant case, it is the contention that one representation made by the agent of the appellee was to the effect that certain parties living near Louisa had given to the railway company a right of way across their premises. These parties were not similarly situated to the appellant. They were not landowners along Madison Street, whose property would be affected in the same or a similar manner to that of the appellant, by the construction of the railway. There is a square

dispute in the evidence as to whether the alleged representation in regard to this matter was made; but, under the peculiar circumstances of this case, we do not believe that, if made, it was such a material representation as could be made the basis of the right for rescission of the contract.

In this transaction, the parties were dealing at arm's length. There was no fiduciary or confidential relationship between them. In fact, it appears from the uncontradicted testimony that the appellant first approached the appellee's agent with an inquiry in regard to the probable location of the right of way of the railway. It is apparent that the appellant desired to have the railway located near his premises. After he had signed the contract in controversy, he went with the appellee's agent, without compensation, to assist in obtaining the signatures of other parties to the same contract. He knew and understood clearly that he was being solicited to grant a right of way along Madison Street, without compensation. He makes no claim that he was in any way deceived in regard to the subject-matter of the transaction. Under these circumstances, the fact, if it be regarded as established, that the agent told him, at the time, that other landowners, not similarly situated, and three miles or more distant from the appellant's place, had agreed to donate a right of way across their premises, was not such a material representation of an existing fact that, if false, it could be made the basis for the rescission of this contract.

In *Palmer v. Bell*, 85 Me. 352 (27 Atl. 250), the court said:

"It is well settled that, to be actionable, the fraud or deceit relied upon must relate distinctly and directly to the contract, must affect its very essence and substance, and it must be material to the contract; for, if it relates to another matter, or to this only in a trivial and unimportant way, or is wholly extrinsic and collateral, it affords no ground of action."

In *Hall v. Johnson*, 41 Mich. 286, it is said:

"The fraud must, therefore, be material to the transaction. If the representations relate to another matter, or to the one in dispute in but a trivial and unimportant manner, they will afford no sufficient ground to set aside the contract."

In *Dingle v. Trask*, 7 Colo. App. 16 (42 Pac. 186), the Supreme Court of Colorado says:

"What a representation must be, to entitle a party to maintain a suit because of its utterance and its falsity, has been settled by a long series of adjudications. It must undoubtedly be of some material fact, and must be a determining factor in the transaction. The party to whom it is made must rely on the representation to his injury, must be without knowledge of its truth or falsity, and it must appear to the court to be reasonably certain that the complaining person would not have acted as he did, but for the making of the statement of which he complains. This rule has been laid down by all the text writers."

It is unnecessary to cite further authorities to sustain this well-recognized rule. While there are certain distinctions between actions at law to recover damages for fraud and deceit, and actions in equity for cancellation of a contract because of fraud and misrepresentation in certain respects, in both classes of cases the representations relied upon as furnishing the basis for the relief sought must be material representations that inhered in and induced the execution of the instrument in question. We do not think that, under all the facts and circumstances as shown by the record in this case, the appellant was induced to sign the contract in question by the representation that other parties, living several miles away and not similarly situated, had agreed to donate a right of way across their premises, even if it be true that said representation was made and was false, which is a close question under the record.

Again, it is argued that, at the time of the signing of the contract in question, the appellee's agent made certain promises to the appellant in regard to the manner in which the railway track would be constructed and the cars operated, particularly with regard to the ballasting of the track and the speed with which trains would be run and the fare that would be charged. It is claimed that these promises so made at the time have not been carried out by the appellee, and that, therefore, the appellant is entitled to a rescission of the contract.

5. FRAUD: acts constituting: promises.

It is unnecessary to cite authorities to the proposition that promises as to what might be done in the future cannot be made the basis for the cancellation of a contract fairly entered into between the parties. If the agreement claimed to have been

made by the appellant and the appellee's agent in regard to
the matters referred to has been breached, the appellant's
remedy is not a cancellation of the contract because of the fail-
ure to fulfill promises so made. In *Paddock v. Bartlett*, 68 Iowa
16, we said:

"Defendant, as a defense to the action, sets up that Mellen
made false representations as to various matters connected with
his enterprise, as that parties of great wealth would be con-
nected with it; that large sums of money would be expended
in building dwellings; that the price of pork would be ad-
vanced, etc., in case the pork-house was built. The instrument
sued upon is the expression of the contract between the parties,
and it is not competent for defendant to change or modify it,
or engraft conditions upon it not expressed therein, by parol
evidence of declaration or agreement of the parties made before
or at the time of its execution."

It is true that, under certain circumstances, a false promise
may constitute fraud. For example, we have held that a sale
of goods to a person having no intention to pay therefor may
be rescinded, and the property sold recovered, owing to the
fraud so practiced. *Cox Shoe Co. v. Adams*, 105 Iowa 402. This
rule is recognized and applied generally in cases of concealed
insolvency and the purchase of goods with no intention to pay
for them. We find nothing, however, in the instant case calling
for the application of this rule, or any reason for a departure
from the general and recognized rule that representations, in
order to justify the intervention of a court of equity to cancel
and rescind a contract, must be material representations of ex-
isting facts. In the instant case, we are convinced from the
record that the appellant understood fully the character of the
contract which he was signing. It was read to him, and he
read it over and understood its contents, and signed it under-
standing it. The appellant knew at the time that he was agree-
ing to give to the railway company a right of way down Madison
Street, and that it was the intention to construct and operate
the railway along said street. We fail to find any such proof
of fraud in procuring the execution of the same as would justify
a rescission of said instrument. Written contracts entered into
between parties who are dealing at arm's length, where there

has been no advantage taken, and where the party complaining has reached the age of maturity and has had business experience, are not to be treated lightly or set aside, unless there is such showing of fraud or misrepresentation as calls for the interference of a court of equity. Fraud is not to be presumed. It must always be proven. The burden rests upon the party charging fraud to furnish the degree of proof necessary at least to overcome the presumption which the law raises that every transaction is free from fraud.

We have examined the evidence in this case with care. On every essential feature of the case, there is decided conflict in the evidence. We are of the opinion that the appellant failed to show such fraud and misrepresentation in procuring the execution of the contract in question as justifies the interference of a court of equity to cancel and rescind the same. It therefore follows that the action of the lower court dismissing appellant's petition must be, and the same is,—*Affirmed.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.