CONSOLIDATED CONSTRUCTION COMPANY, Appellee, v. WILLIAM BEGUNCK, Appellant.

No. 46182.

MAY 11, 1943.

464

W. J. Wilkinson and Hatter & Hatter, all of Marengo, for appellant.

F. C. Harrison, of Davenport, for appellee.

BLISS, J.—Consolidated Construction Company is the trade name of an unincorporated business at Moline, Illinois, owned and operated by William F. Locander. The general nature of the business is the repair and reconstruction of residence properties. During the year 1940 considerable of this business was done in Iowa County, Iowa, through two authorized agents of the plaintiff, William Burton and Carl H. Voss. These men procured the contracts. Most of the contracts were obtained by Voss, and he gave general superintendence to most of the work, and attended to keeping on hand materials furnished by the plaintiff or by local dealers. He also hired such local labor as was needed in addition to the men sent out from Moline. E. J. Navrot, a brother-in-law of Locander, was the general manager of the business, and was occasionally in Iowa county to check upon the work and to make collections. Locander, so far as disclosed, did not come into Iowa county, and gave no attention to the business on location.

The defendant, a retired farmer, seventy-two years old, lived on his farm with his daughter and son-in-law, who operated it. On August 13, 1940, William Burton, agent of plaintiff, and Begunck executed a written contract for the improvement of the latter's farm residence. This contract provided that the plain-

tiff, as contractor, agreed to furnish all materials and labor for the improvement on the premises on "R. R. 1, Marengo," in accordance with specifications set out in the contract:

"All for the sum of $425.00. The undersigned property owner agrees, upon completion of said work, to pay Cash (if any) Oct. 15th $425.00 and execute a promissory note for the balance of ................... $....................... Payable in ................. equal monthly installments."

The contract also contained provisions that the property should stand as security for the contract, and that the agreement should become binding only upon written acceptance by the contractor or his authorized officer, or upon commencing performance of the work. It was signed by Begunck, and by "Consolidated Const. Co. 2307 5th Ave. Moline Illinois (Contractor) By Wm. Burton (Authorized Agent)." All of this signature had been previously stamped on the contract, except the name "Wm. Burton," which was written by the latter above the blank line, when the contract was executed.

Burton took the original contract with him and left the carbon duplicate with Begunck. The latter's son-in-law saw this contract executed. The next day Voss called on Begunck and told him he was an agent of the plaintiff and showed him a number of these improvement contracts signed by people in the community. With respect to the printed matter therein these contracts were identical with the one signed by Begunck. Upon the order of the trial court some twenty of these executed contracts were produced by the plaintiff. All of them were on the same printed form as that of Begunck's, with the plaintiff's name stamped thereon, and the agent's name written. Voss hauled out much of the materials in his car, and was on the job supervising the work about every day, but did no manual labor. The two laborers from Moline completed their work in about a week or ten days and a carpenter from Amana finished the job in two or three days more. On August 20, 1940, when the Moline workmen were through, Voss told Begunck that it would be necessary for him to sign a release showing the completion of the work and a note so that the Moline men could get their money. The defend-

ant signed both the release or completion certificate and the note at this time. The promissory note was on a blank of the Iowa County Savings Bank of Marengo, and payable there. It was for $425, payable October 15, 1940, to Carl H. Voss. This note bears the paid stamp of the said bank showing payment on October 25, 1940. The note bears the endorsement, "Without Recourse," of Carl H. Voss. The defendant, speaking of the note, said:

"I don't know whether Voss's name was in there or not but I think so. * * * I knew I was dealing with the Consolidated Construction Company and that Voss was their agent, I didn't see their name on the note."

Navrot called on the defendant with Voss about the time the work was completed and told the defendant he was the manager. Sometime later he again saw the defendant and there was some talk about payment of the $425. Defendant testified that Navrot asked him whether he had paid any money or notes to Voss, and asked him if he was ready to pay the $425. Navrot testified that he talked with him about the payment of the money, and Begunck said that he understood that he had $425 to pay the Consolidated Construction Company, and that he had the money ready when it was due. Navrot said he would call and collect it at that time and defendant told him to do so. On October 12th or 13th, Navrot was in the neighborhood and told defendant if he had the money he could give him the proper receipts. Defendant then told him that he had just received a notice that day from the bank that his note was due there. Navrot told him he had no knowledge that they had any notes at the bank. The next day he inquired at the bank and was shown the note of Begunck payable to Voss which the bank had bought. He told defendant of this and the latter said he would probably have to pay the note twice. There is no denial of these matters by the defendant.

On October 16, 1941, plaintiff filed his petition in equity to foreclose a mechanic's lien, alleging the contract of August 13, 1940, for re-siding and improving the dwelling on the defendant's property described as the Northeast Quarter of the Northwest Quarter of Section 31, Township 80, Range 11, in Iowa county. Attached to the petition was a copy of the contract of August 13, 1940, except that it bore the signature of Carl H.

Voss instead of William Burton, who had in fact procured and signed the contract. The petition alleged the filing in the clerk of court's office on October 21, 1940, of a statement for mechanic's lien against the real estate above described, and a copy thereof attached to the petition, states that it was executed and sworn to by Locander on October 15, 1940. Judgment was prayed for $425 with interest, and foreclosure of the lien.

Defendant filed answer admitting the ownership of the property, denying the execution of the agreement set out in the exhibit to the petition, and denying any indebtedness to the plaintiff. Later defendant filed a cross-petition and an amendment to the answer. In division two of the amendment he alleged the business done in Iowa county, solely by the agents Burton and Voss; how they were furnished with blank contracts, such as defendant had signed, by the plaintiff; their authorization by plaintiff to solicit the execution of these contracts for improving buildings in the community, and to purchase some materials and labor locally; that the agents in the conduct of the business furnished labor and sold materials, in some instances for cash and other instances on deferred payments or by executing promissory notes payable to the plaintiff or to Voss; that by reason of these alleged matters the plaintiff established a custom and usage for the conduct of plaintiff's business; that relying on the matters pleaded, in August 1940 the defendant purchased from plaintiff or Voss certain materials for $425, and on August 20, 1940, paid the plaintiff, through Voss, the full amount owing the defendant on account of said work. In division three defendant alleged that because of the said conduct of plaintiff he purchased the labor and material and paid for the same, and the plaintiff is estopped from asserting the claims in his petition. The cross-petition denies the execution of the contract, realleges, by reference, the allegations of his answer and amendment thereto, and prays the cancellation of the contract.

In reply to the amended answer, and in answer to the cross-petition, the plaintiff alleged the execution of the contracts; the furnishing of materials and labor to perform the contracts; the limited capacity of his soliciting agents as salesmen with incidental duties in connection therewith. He denied other allega-

tions generally, and in particular that the agents furnished or sold or had any authority to furnish or sell materials or labor, or that they had any authority to bind plaintiff by any contracts without approval by him or his authorized officers, or that they had any authority to take promissory notes payable to the plaintiff or to such agents, and particularly to Carl H. Voss, and denied that Voss sold or furnished any of the materials necessary to make the improvements specified in the contract.

In an amendment to the answer to conform to the proof the defendant alleged that the contract was materially and fraudulently altered, and thereby rendered void, by erasing the signature, "Wm. Burton," and inserting instead the name "Carl H. Voss" and by substituting "October 15th" for Oct. 15."

The trial was not had at one sitting. Plaintiff used the defendant as a witness to identify his signature to the contract of August 13, 1940, which contract, being the original, bearing the signature of Voss instead of Burton, was received in evidence subject to objection. Plaintiff then put Navrot on the witness stand and showed a conversation with defendant about the payment for the work. After the substance of this conversation was stricken, the plaintiff rested his case. He made no attempt to establish the allegations of the petition respecting the mechanic's lien, and made no offer of the mechanic's-lien statement or of the record thereof. And at no time thereafter did he make any such attempt.

Much of the defendant's case was an attempt to sustain the allegations of his amended answer respecting the manner in which the plaintiff did business in that community through his agents Burton and Voss, and the alleged custom and usage thereby established. To do so defendant testified that Voss showed him a number of executed contracts similar to his contract. A carpenter from Amana testified that he worked for the plaintiff on several jobs under the supervision of Voss, including the defendant's job; that he frequently got material from the Cable Lumber Company, and from plaintiff's place for storing material in Marengo. On some of the jobs Voss paid the carpenter in cash and on others the plaintiff paid him by check. After Voss absconded, Navrot sent the carpenter out to the defendant to finish some work and the plaintiff paid him. He saw material being

delivered at defendant's farm in trucks with the name "Consolidated Construction Company" printed on them.

The manager of the Cable Lumber Company testified that in 1940 the company sold building material to Voss for the Consolidated Construction Company, some of which Voss paid for in cash, and some by check of the plaintiff.. A statement of the account dated October 18, 1940, showing debits and credits from June 5th to October 1, 1940, was received in evidence. The total charges as of the date of the statement were $499.99. The balance was $109.17. The cash credits were $44.72 and the check credits of the Consolidated Construction Company were $321.35. There were several credits for returned material.

One Eggert was a witness for defendant. He had a contract with plaintiff, procured by Voss on August 20, 1940, providing for a cash payment of $50 on completion and a note for $700 due in ninety days. He testified that when he signed the contract he told Voss he would pay the note in about four months, "but when he [Eggert] got a letter back from the Company signed by Navrot it stated about monthly payments—which was new to me." In about ten days, and before the job was completed, Voss asked for some money, and Eggert said, "not one cent until it's done." About ten days later, on September 20, 1940, Voss and Navrot came to the farm, and while the latter remained in the yard, Voss came into the house and asked him to sign two or three notes in which the payee was not named. Eggert refused to sign these and then Voss filled out a note on a blank of the Iowa County Savings Bank of Marengo, payable to the Consolidated Construction Company at that bank, in four months, for $700. At the same time Eggert gave a check on the same bank payable to the plaintiff for $50, which bears the endorsement of the plaintiff by E. J. Navrot, and is stamped "paid on September 24, 1940." The cashier of the above-named bank testified that Voss brought in the Eggert note, and endorsed the plaintiff's name by him in his presence. The bank bought the note for $686 and gave Voss a draft payable to the plaintiff which the bank later paid. Eggert made the final payment on the note on January 4, 1941.

Philip Holl had a contract with plaintiff dated June 19, 1940, to construct improvements for the sum of $200, of which $100

was due on completion and $100 thirty days after completion. Holl had another contract dated June 19, 1940, calling for $500 on completion. The banker testified that his bank loaned Holl the money to pay Voss.

Minnie Brant signed a contract on August 8, 1940, with plaintiff, through Voss, for repairs of $350. On August 9, 1940, Voss had her sign a note payable to him for $350, at which time he tore up her contract. The Savings Bank bought this note of Voss and endorsed by him and paid him in cash. She testified, over objection, that Voss told her the company allowed him to do business that way.

Plaintiff produced nineteen other executed contracts, the same in form and execution as the contract of defendant. Twelve of these contracts provided for payment in equal monthly installments over a period of three years. These contracts were all that were executed in Iowa county prior to August 13, 1940, according to the affidavit to which the contracts are attached. This affidavit also recites that the Commercial Credit Corporation and the American National Bank and Trust Company of Chicago, Illinois, discounted some of the notes given with contracts. Some of these contracts had stamped across their faces the words, "Company Not Responsible For Money Paid Salesmen." No such words were on the Begunck contract.

The trial court found the due execution of the contract of August 13th by the defendant and by the plaintiff, through his authorized agent, Burton. It found there was no explanation of the substitution of the name of Voss for that of Burton on the contract retained by plaintiff, and held that this alteration was not a material one since it in no manner changed the legal effect of the contract. The court also found that the defendant neither pleaded nor proved any prejudice because of the alteration, and did not attempt to rescind the contract nor seek damages against the plaintiff or either of his agents. It found that the plaintiff had not been paid and that defendant had not established that Voss had express or apparent authority to accept defendant's note in payment of plaintiff's account, and that in the exercise of ordinary prudence, the defendant knew and should have known that Voss had no such authority based upon anything said or done by the plaintiff. It found that defendant was the owner of

the farm and buildings thereon described in the petition, but also found that "The evidence fails to identify the buildings on the real estate described in plaintiff's petition as the ones on which the labor and materials were furnished by plaintiff." The court decreed that, "For lack of proper identification plaintiff is not entitled to a mechanic's lien or the foreclosure thereof." Judgment was entered for the amount of the claim.

I. Appellant's first assignment of error challenges the failure of the court to sustain his defense of payment and estoppel, based upon the ground that he was justified in executing his note payable to Voss as a payment of appellee's claim. It is our conclusion that he failed to establish this defense. The trial court was fully warranted in finding and holding that the record did not establish that Voss had actual authority either express or implied, or apparent authority, to accept the promissory note of the appellant payable to himself in satisfaction of the appellee's account. Appellant's contract, an original duplicate executed by appellee, was in his possession. By its terms he was obligated to pay appellee cash on October 15, 1940. There was no provision therein that he was to pay *anyone* by his promissory note. By its express terms the appellee was to furnish the stipulated material and labor, for which the appellee, and not Voss, was to receive $425 in cash. He knew that Voss was not the principal, and he knew that Voss did not furnish the material and labor. He knew that he was but the agent of the appellee to procure contracts and to supervise the performance of those contracts. His own contract and every contract in the record which he may have seen disclosed that the appellee was the contractor who was to make the improvements and who was entitled to and was to receive the pay therefor. Every witness, including the appellant, testified that he knew or was told that the appellee was the principal and that Burton and Voss were but his agents. There is the testimony of Minnie Brant that Voss told her the company permitted him to take notes payable to himself, but there is no evidence in the record justifying a finding, by any word or act of the appellee, or of his general manager, Navrot, that Voss had actual or apparent authority to accept promissory notes payable either to the appellee or to Voss. It is true that Voss procured

the note of Eggert, payable to the appellee, but he did so at the express direction of Navrot, who was with him at the Eggert home on this occasion. ''Apparent authority must be determined by what the principal does, rather than by any acts of the agent.'' Grismore v. Consolidated Products Co., 232 Iowa 328, 335, 5 N. W. 2d 646, 651, and cases cited. There is no merit in this assigned error.

II. Appellant assigns as error the failure of the court to dismiss the action and relegate the appellee to an action at law because he failed to establish his right to a mechanic's lien and the foreclosure thereof. He insists the court had no power or jurisdiction to enter a personal judgment against the appellant.

This is not a question of power or jurisdiction of the trial court. Having jurisdiction of the parties and of the subject matter, under the record, it had jurisdiction to hear and determine and to make such disposition of the cause as the pleadings and the evidence warranted. Under our procedure we have but one court of general jurisdiction, and that is the district court. Before it all proceedings come, whether they be criminal, probate, law, or equity. Forms of action may differ, and separate dockets are kept, but these are merely for convenience and expedition in the administration of justice. If a party believes that the cause is wrongly docketed, his remedy is not an attack upon the jurisdiction by demurrer, motion to strike, or motion to dismiss, but to transfer or move to transfer to the proper docket. As sustaining the above-stated propositions, see Todd v. State Bank of Edgewood, 182 Iowa 276, 294, 165 N. W. 593, 3 A. L. R. 971; In re Estate of Heaver, 168 Iowa 563, 567, 150 N. W. 698; Niemand v. Seemann, 136 Iowa 713, 715, 114 N. W. 48; Smith v. Haas, 132 Iowa 493, 495, 109 N. W. 1075; Doyle v. Dugan, 229 Iowa 724, 732, 295 N. W. 128; In re Will of Proestler, 227 Iowa 895, 901, 289 N. W. 436; Filkins v. Severn, 127 Iowa 738, 741, 104 N. W. 346; Tucker v. Stewart, 121 Iowa 714, 715, 97 N. W. 148; Goodnow v. Wells, 67 Iowa 654, 657, 25 N. W. 864; Reiger v. Turley, 151 Iowa 491, 497, 131 N. W. 866; Conyngham v. Smith, 16 Iowa 471, 473.

Appellee relies upon the often-announced rule that when equity has once obtained jurisdiction of a controversy it will

determine all questions material or necessary to the accomplishment of full and complete justice between the parties, even though in doing so it may be required to pass upon some matters ordinarily cognizable at law. Holman v. Wahner, 221 Iowa 1318, 1322, 268 N. W. 168; Franklin Ins. Co. v. McCrea, 4 (Greene) Iowa 229, 230; Penn Mut. L. Ins. Co. v. Doyen, 211 Iowa 426, 433, 233 N. W. 790; Reiger v. Turley, supra, 151 Iowa 491, 498, 131 N. W. 866; Howard v. National French Draft Horse Assn., 169 Iowa 719, 728, 151 N. W. 1056; Utterback v. Stewart, 224 Iowa 1135, 1138, 277 N. W. 735; Gephardt v. Metropolitan L. Ins. Co., 213 Iowa 354, 356, 239 N. W. 235.

The appellant does not question this principle, but alleges that there is another rule just as definitely established to the effect that where a party pleads a cause of action cognizable in equity, but fails to establish the same, the court is wholly without power or jurisdiction to grant any purely legal relief such as the rendition of a money judgment, but must on its own motion dismiss the cause as an equity action and relegate the parties to the law courts. Appellant insists that the cases last cited are bottomed on the proposition that a cause in equity exists. Gephardt v. Metropolitan L. Ins. Co., supra, 213 Iowa 354, 356, 239 N. W. 235. He cites and quotes in support of his position Fisher v. Trumbauer & Smith, 160 Iowa 255, 262, 138 N. W. 528, 141 N. W. 419; Dunlop v. Wever, 209 Iowa 590, 601, 228 N. W. 562; Smith v. Waterloo, C. F. & N. R. Co., 191 Iowa 668, 182 N. W. 890. Other cases which refer to this rule are Richmond v. Dubuque and Sioux City R. Co., 33 Iowa 422, 489; Lutton v. Baker, 187 Iowa 753, 755, 174 N. W. 599, 6 A. L. R. 1696; Fallers v. Hummel, 169 Iowa 745, 751, 151 N. W. 1081; Day v. Dyer, 171 Iowa 437, 444, 152 N. W. 53. In Hume v. Independent Sch. Dist., 180 Iowa 1233, 1246, 164 N. W. 188, mention is made of the fact that there is some conflict in our decisions on this point, and there is some discussion of Fisher v. Trumbauer & Smith, supra, 160 Iowa 255, 262, 138 N. W. 528, 141 N. W. 419, that it may not be strictly in point. See, also, Deaton v. Hollingshead, 225 Iowa 967, 970, 282 N. W. 329, 331, in which suit was brought on notes secured by real-estate mortgage for judgment, and a decree of foreclosure. The plaintiff took only a judgment on the notes.

It was insisted that it was not a suit in foreclosure. We held to the contrary, saying:

"The court of equity had jurisdiction of the controversy and parties, and the action having been properly brought in equity, all issues, legal and equitable, are triable therein and the court will determine the entire controversy."

In that case, it is true that the equities did not fail, but the plaintiff did not seek to enforce them. See, also, Williamsburg Sav. Bk. v. Donohoe, 203 Iowa 257, 212 N. W. 555. Green Bay Lbr. Co. v. Miller, 98 Iowa 468, 472, 62 N. W. 742, 743, was a suit in equity for money due for building material and to foreclose a mechanic's lien therefor. The trial court held that the plaintiff was not entitled to the liens claimed, and although the defendant owed the debt, the court refused to enter judgment therefor and dismissed the petition. In reversing, and in the second division of the opinion, this court said:

"We think plaintiff is entitled to judgment in this action for the balance due from the defendants, with interest, *even though it were found that neither of the liens claimed should be established.*" (Italics ours.)

It is true that in the later divisions of the opinion this court found that the liens should have been established.

The rule contended for by appellant is thus stated in the Fisher v. Trumbauer & Smith case, supra, 160 Iowa 255, 262, 263, 138 N. W. 528, 531:

"No reasons are stated in support of the practice indorsed in these cases, and we are inclined to adhere to the rule approved by the overwhelming weight of authority that when the equities of a petition fail for want of proof, and enough is contained therein to state a cause of action at law, relief ought not to be granted, but the cause transferred to the law side of the calendar and there tried."

But as expressly stated in the opinion in that case, the remedy was not dismissal, but a transfer to the proper docket. Because the action was dismissed, the action of the court was reversed. In Dunlop v. Wever, supra, 209 Iowa 590, 601, 602, 228 N. W.

562, 567, we reannounced the rule stated in the Fisher case. In that case, the plaintiff sued for specific performance, but whether he prayed for damages as alternative relief is not clear from the opinion. The trial court denied specific performance, and plaintiff insisted that it should have allowed him damages for breach of contract. The trial court dismissed the petition for specific performance, " 'all without prejudice to the rights of either party to litigate the matters herein involved in a court of law.' " There apparently was no motion by either party to transfer to the law calendar. We held that the court did not abuse its discretion in making the order. It was not a dismissal of the law cause, but left the plaintiff free to transfer to law, or to move for a transfer. Had the trial court determined the issue as to damages, neither party would have been entitled to a reversal since neither party moved for a transfer to the law docket.

And in this case the authorities relied upon by appellant do not aid him in any way. The appellant at no time and in no manner in the trial of the case raised the question of the power, jurisdiction, right, or discretion of the court to hear or determine the issue respecting amount of recovery. He knew at the close of the appellee's main case that he had not established his right to a mechanic's lien, and he knew it at the close of all of the evidence, and yet at no time did he move to transfer the suit to the law calendar or docket. This question is not argued in the printed record, and the appellee states that, although the case was argued fully and on extensive briefs in the lower court, the question now presented by the appellant was never raised or argued there. On oral submission the writer asked the attorney for the appellant if a motion to transfer had been filed by him, and he replied that none had been filed and that none was necessary. Such a position may be justified only upon the ground that the trial court had no jurisdiction to render judgment for the amount found owing the appellee. As said in Todd v. State Bank, supra, 182 Iowa 276, 295, 165 N. W. 593, 599, 3 A. L. R. 971:

"*It is not, as counsel seem to think, a question of jurisdiction, which may be raised at any time.* The case was brought in the district court, and the district court had jurisdiction of the

parties and of the subject matter. Whether it be triable to the court as in equity, or to a jury as at law, is merely a question as to the manner of trial and the relief which may be administered. If either party thinks that the case should be docketed for trial in equity instead of at law, or vice versa, it is his privilege to move for such order. If he fails so to do, no exception thereto taken on appeal is entitled to consideration." (Italics ours.)

Likewise, in Johnson v. Home Mut. Ins. Assn., 191 Iowa 535, 539, 181 N. W. 244, 246, we said:

"Under our system of practice, a mistake in this respect does not go to the jurisdiction of the court, but may be made the ground of a motion to transfer the cause to the proper docket. No motion being made, the error, if any, is waived."

When the cause was submitted every pleaded issue was before the court. Having made no objection to the court's determining them, appellant will not be thereafter heard to protest against an adverse decision. Not having asked the trial court to pass upon this question, he cannot raise it for the first time on appeal. Many decisions so hold. See Reiger v. Turley, supra, 151 Iowa 491, 500, 131 N. W. 866; Bates v. Seeds, 223 Iowa 70, 74, 272 N. W. 515; In re Estate of Weidman, 209 Iowa 603, 606, 228 N. W. 571; Easton v. Somerville, 111 Iowa 164, 170, 82 N. W. 475, 82 Am. St. Rep. 502; In re Estate of Heaver, supra, 168 Iowa 563, 568, 150 N. W. 698; Campbell v. Collins, 152 Iowa 608, 616, 132 N. W. 381; Patterson v. Bingham, 222 Iowa 107, 113, 268 N. W. 30, and cases cited; Lewis v. Soule, 52 Iowa 11, 14, 2 N. W. 400; Beach v. Youngblood, 215 Iowa 979, 984, 247 N. W. 545; Des Moines Music Co. v. Lindquist, 214 Iowa 117, 120, 241 N. W. 425.

The Code sections 10945 et seq., covering transfers to the proper docket, refer only to transfers or motions made to transfer before answer is filed. However, this does not mean that a motion to transfer may not thereafter be made if in the progress of the trial it develops that the issues proper to the calendar where the case is docketed are eliminated. In this case equitable issues were pleaded in the petition and the appellant could not then move to transfer to law, but after the equitable

issues were disposed of, he was not only permitted, but he was required, to move to transfer if he wished thereafter to complain as to the forum. As said in Fitzgibbon v. Midland Mtg. Co., 197 Iowa 1379, 1383, 199 N. W. 292, 293:

"The thing essential to the retention of a case in equity when commenced on that side of the court *is the presence of an equitable issue at the time the question is raised,* and not alone the fact that it was originally commenced in equity." (Italics ours.)

And as said in Lutton v. Baker, supra, 187 Iowa 753, 756, 174 N. W. 599, 600, 6 A. L. R. 1696:

"There was no right to obtain a transfer while nothing existed except a good petition in equity. In such case, attack must be deferred until, notwithstanding the allegations of such petition, it is made to appear that no right to equitable relief exists."

See, also, Gorman v. Joens, 189 Iowa 845, 850, 179 N. W. 138; Day v. Dyer, supra, 171 Iowa 437, 444, 152 N. W. 53.

We also call attention to the fact that when the cause was submitted to the court the equitable issue for cancellation of the contract of August 13th, prayed for in appellant's cross-petition, was in the case for determination.

It is our conclusion that there was no error in the rendition of the judgment for the appellee.

III. The appellant complains on appeal that the erasure of the signature "Wm. Burton" from the contract and the substitution of the signature of Carl H. Voss in its stead was a material alteration of the contract, and since the substitution was conclusively established to have been made without the knowledge or consent of the appellant, after the execution of the contract and its delivery to Burton for the appellee, the validity of the contract was thereby destroyed. The trial court, as noted herein, found that the alteration was not material. We agree with this finding. It is a general rule in this state and elsewhere that an alteration of a written contract, to be material, must be a change "which enlarges the contract, adds to the obligation of the party bound by the paper or varies its original legal effect," (Robinson v. Reed, 46 Iowa 219, 220); it must give the instrument a different legal effect. Iowa Valley State Bk. v. Sigstad,

96 Iowa 491, 494, 65 N. W. 407; Throp v. Chaloupka, 202 Iowa 360, 362, 208 N. W. 299. In Rowley v. Jewett, 56 Iowa 492, 495, 9 N. W. 353, 354, we said:

"We are of opinion the legal effect of the bond was not changed by the interlineation. No one obtained any advantage, nor was anyone injured thereby."

See, also, Starr v. Blatner, 76 Iowa 356, 359, 41 N. W. 41. In Sawyer v. Campbell, 107 Iowa 397, 401, 78 N. W. 56, 57, the court said:

"It is said in 1 Greenleaf [on] Evidence, section 565, that any alteration which causes a written contract to speak a language different in legal effect from that it originally spoke is material."

See, also, Jackson v. Boyles, 64 Iowa 428, 431, 20 N. W. 746; University of Illinois v. Hayes, 114 Iowa 690, 87 N. W. 664; Hartwick v. Hartwick, 217 Iowa 758, 252 N. W. 502; Durband v. Ney, 196 Iowa 574, 581, 191 N. W. 385; Horton v. Estate of Horton, 71 Iowa 448, 453, 32 N. W. 452; 2 Am. Jur. 598 et seq.

This alteration in no way changed the legal rights, obligations, or relations of the parties to the contract. They had entered into a binding and enforceable contract, evidenced by instruments executed in duplicate. Each instrument was executed at the same time and each was an original contract legally enforceable. Had the appellee refused to perform, the appellant could have established the agreement by the written instrument in his possession. The terms and the legal effect of the agreement entered into on the thirteenth of August 1940 were not in any way changed because Voss erased Burton's name and subscribed his own to the instrument evidencing the agreement in the appellee's possession. The appellant was in no way injured by the alteration, and we see no way in which injury to him might reasonably be apprehended. The contract had been fully performed to his satisfaction. The appellant argues that if Burton had not been authorized to sign the contract he would be liable in damages to him. We see no point in the argument. Erasing his name from the contract would not change his liability. Any suit against him would be for damages, and not on the contract, and with the

duplicate contract in his possession, the appellant would be in no way handicapped in proving his case because of the alteration in the other instrument.

There is no basis for the error complained of.

The judgment and decree appealed from is affirmed.—Affirmed.

All JUSTICES concur.