ANNA C. H. BURMEISTER, Appellee, v. JULIUS H. HAMANN et al., Appellants.

No. 39641.

JUNE 24, 1929.

*Ruymann & Ruymann,* for appellants.

*Hoersch & Hoersch,* for appellee.

ALBERT, C. J.—In October, 1927, William J. Hamann was the owner of the property in controversy herein, to wit, Lots 1, 2, and 3 in Block 2 in Westholme Second Addition to the city of Davenport, Iowa, also known as No. 2150 West Locust Street in said city, which was his home, which he apparently occupied alone. Anna C. H. Burmeister, 59 years of age, was in the employ of Hamann, as housekeeper. On the 20th day of October, 1927, these two parties entered into a written contract, by the terms of which Mrs. Burmeister was employed as housekeeper, to devote all of her time to the care of Hamann and his home, do the housework and nurse him in case of sickness; and, if she should not be able, he was to hire a special nurse, if necessary. She was to be paid $6.50 per week, payable in monthly payments. Part of the contract reads as follows:

"In case the said second party remains as housekeeper, performing the duties as aforesaid until the death of said first party, as a part of the compensation in payment of second party's services she shall receive the property occupied by the first party as his home [the property above described]. The title to said home to belong to the second party after the death of first party, it being however understood that second party receives the title to said real estate only in case she remains continuously with the first party from the date hereof to the time of his death and performs the services hereinabove mentioned. For the purpose of passing title to the second party after the death of the first party, this instrument shall be considered as a part of the will of first party, and it is hereby witnessed by two witnesses, so as to make the same a valid will and a will which may be admitted to probate."

This contract was signed by both parties and witnessed by two witnesses.

William J. Hamann died on January 7, 1928. Mrs. Burmeister brings this action in equity for the specific performance of this contract, and makes the executors of William J. Hamann and all of his heirs at law parties defendant.

By way of answer, the defendants deny generally the allegations of plaintiff's petition, but admit the execution of the contract and the heirship. They further allege that plaintiff, in addition to the $6.50 a week, received her board and lodging, and that the same was a full and fair compensation for her services; that the part of the alleged agreement relative to the real estate was without consideration, and a mere gratuity or gift, which was not delivered during the lifetime of the decedent, and that said contract was without consideration, and has been and is null and void and unenforcible; that said written contract lacks mutuality; that the plaintiff was not bound by the so-called contract to work for the defendant or to stay with the defendant; and that the defendant was not bound to employ the plaintiff, and it was not and is not a binding contract; further, that said contract is repugnant to the morals of the times, and is null and void; lastly, that the consideration for said written contract is so small and inadequate as to be an unconscionable consideration, and therefore the contract is null and void.

The evidence in the case shows without dispute that Mrs. Burmeister performed her part of the contract in full.

The principal point in relation to this contract on which the appellants center their fire is a lack of mutuality in the contract, in that they claim that, under the terms of the contract, Mrs.  Burmeister did not agree to stay and care for the defendant and his household until his death, and therefore there was a lack of mutuality in the contract. If we assume, without deciding, that this is true, this contention is of no avail to the defendants. In *Des Moines Valley R. Co. v. Graff*, 27 Iowa 99, l. c. 103, this court said:

"* * * it is plain law that, if A. promise to pay B. a sum of money if he will do a particular act, and B. does the act, A. is liable, though B. did not, at the time of the promise, engage to

do the act; for, upon the performance of the condition by the promisee, the contract is clothed with a valid consideration, which relates back, and the promise at once becomes obligatory."·

This doctrine has been followed by this court in *B. & M. R. R. Co. v. Penney,* 38 Iowa 255, 256; *First Nat. Bank of Cedar Rapids v. Hendrie,* 49 Iowa 402, 405; *Bobzin v. Gould Balance Valve Co.,* 140 Iowa 744, 748; *Meader v. Incorporated Town of Sibley,* 197 Iowa 945, 955. And it seems to be quite uniformly the rule in this country. See 13 Corpus Juris 334, Section 181, and cases there cited.

This also disposes of the question raised by the appellants of lack of consideration, which contention, of course, could not be considered for a moment, in view of the terms of the written contract, which recites that, as a part of the consideration of the contract, this property was to pass to Mrs. Burmeister on the death of Hamann, provided she performed her part of the contract.

There is no question of gift involved in the set of facts we have before us, and there is nothing in the record which would tend to show that this was a contract that was repugnant to good morals.

It is shown that this property was worth about $4,500, and it is urged that, because of the death of Hamann shortly after the contract was entered into, the consideration for the transfer of  this property was infinitesimal and wholly inadequate, under the rule laid down in *Rarick v. Womer,* 184 Iowa 1016, and *Edwards v. Foley,* 187 Iowa 5. We do not think that these cases have any application to the situation before us. When Mrs. Burmeister entered into this contract with Hamann, she took her chances, as did he, as to when his death would occur. It was possible that he might live 20 years, or that he might die the day after the contract was signed. Each party took his chances on this proposition, and each must abide by the result of the terms of the valid contract. That such contracts have been recognized and enforced in this court is shown by a large number of cases, commencing with *Franklin v. Tuckerman,* 68 Iowa 572, and ending with *Hankins v. Young,* 174 Iowa 383.

There is no question raised as to the mental capacity of the deceased to enter into this contract; the property belonged to

416

him; he was the one to judge of the value of the services contracted for; and, he having done so, those claiming under him are bound thereby. As illustrative of this point, see *Clark's Appeal from Commissioners,* 57 Conn. 565 (19 Atl. 332); *Bentley v. Lamb,* 112 Pa. St. 480.

If we should treat this instrument as purely testamentary, having been executed for a valid consideration, it constitutes an irrevocable contract. 1 Woerner on American Law of Administration (3d Ed.), Section 37, 1. c. 76-80 inclusive;  3 Elliott on Contracts, Section 2325. That it is not necessary that the title vest during the grantor's lifetime, see *Shaull v. Shaull,* 182 Iowa 770; *Leonard v. Wren,* 184 Iowa 1339; *Manchester v. Loomis,* 191 Iowa 554.

One other question is raised, and that is as to procedure. Appellants invoke the general rule that a litigant cannot resort to equity when a plain, speedy, and adequate remedy at law exists by probating the instrument. To this it is  sufficient answer to say that the plaintiff filed her petition in equity, and no attack was made thereon in any form, and defendants answered the same without asserting want of jurisdiction of the court to proceed in equity. Since they have so treated the matter, it is too late now to raise a question of procedure. On the other hand, specific performance is a matter solely cognizable in equity; and, this being a written contract of the character set out heretofore, there would be no question that plaintiff was entitled to bring an action for specific performance. While it is possible that plaintiff could have offered this instrument in probate court, and by admission of the same thereby, the record title would have passed (a question which we do not determine), yet, since she has solicited the action of a court of equity thereon, and defendants have accepted the issues tendered without questioning the procedure, they cannot now raise such question.

This leads us to the same conclusion as that reached by the district court.—*Affirmed.*

Evans, Kindig, Wagner, and Grimm, JJ., concur.