DES MOINES MUSIC COMPANY, INC., Appellee, v. C. A. LINDQUIST, Appellant.

No. 41217.

118

C. H. Burgardt, for appellant.

Brown, Brown & Harvey, for appellee.

ALBERT, J.—On the 25th day of January, 1930, plaintiff and defendant entered into a conditional sales contract by which plaintiff sold to the defendant a radio designated in the contract as "Radio Style Temple Make 8-61". The deferred payments were to be made monthly, and as usual in such contract, title was not to pass until all payments had been made. In pursuance of said contract, radio 8-61 was duly installed in defendant's residence. According to his testimony, the instrument did not operate satisfactorily; he was only able to hear the Des Moines radio station thereon, and even then there was fading or an increase in volume, and the reception was not uniform. About an hour after it was installed "it went dead". He notified the company, and they sent out a man to fix it, and this man told defendant that the shipment of which this machine was a part was defective, and the manufacturer had told them to return them. He put in a new tube and left. He further testified that when he tried to get stations other than Des Moines they came in "in a jumbled-up mass," and could not be separated, and the instrument "went dead" again by reason of the blowing out of tubes.

Further complaint was made to the company by the defendant and "the company came out and got the machine". They tried out another machine which was different from the first one. This instrument seems to have been Temple Model 8-60. Defendant tried out this second machine and it operated about as the first one, and he notified the company he would not accept this second instrument and advised them to come and get it. They refused so to do, and later, within about a

week after it had been delivered, defendant took the machine back and left it with the plaintiff. Plaintiff then sent the machine back to the defendant's residence, and defendant later took it back to plaintiff's place of business.

When defendant took the first instrument back to plaintiff, he had a conversation with the manager in which the manager told him he would hold him (defendant) to his contract in regard to the first machine. Defendant testified: ''There was nothing said at that time about exchanging the machine for another machine or any agreement entered into at that time.'' In response to a question of whether or not the defendant gave the plaintiff, or its representative, notice of his intention to cancel or rescind the contract, he said: ''I informed both the credit manager and the manager of the store, the sales manager, that I refused to continue the contract. That notice was verbal and in several conversations over the telephone.'' This statement of the plaintiff's was undenied on the part of the defendant.

The second instrument, 8-61, was returned to defendant's residence, and he referred to it in his testimony as the ''third radio.'' Plaintiff testified, however, that it was the same instrument, to wit, No. 8-61. Defendant testified he never accepted the same nor did he make any agreement to pay therefor. He also testified that he had no understanding or agreement with the plaintiff that the second radio was to be covered under the terms of the contract.

On behalf of the plaintiff, one Owens testified that he was the sales agent of the plaintiff and had a conversation with the defendant prior to the time the second instrument was sent out. He says:

''Lindquist (defendant) came in and was telling about the first radio and was not quite satisfied with it. I offered to exchange radios with him, thinking perhaps another radio set would operate better than the one he had. I sent out the second set and that appeared to be agreeable to him. He did not object to it. At that time nothing was said about cancelling the contract.''

The contract contained no provision whatever permitting the plaintiff to substitute any other instrument for the one for

which the contract was made. The above is the only testimony touching such a proposition, and it does not rise to a contract between the company and the defendant for such substitution, if one were permitted.

The petition of the plaintiff herein sets out the contract above referred to, being a contract for a Temple Make Instrument 8-61. While it is not specifically stated, we take it the second instrument was designated "Temple Make 8-60". Both parties concede that there were two different radio instruments sent to the residence of the defendant.

The case was tried about nine months after the second instrument was sent back by defendant to plaintiff's place of business. Plaintiff introduced demonstrative testimony by bringing what they claimed to be the "second" instrument into court and demonstrating to the court that the instrument worked perfectly, or at least, satisfactorily.

On the submission of the matter to the court, it was held that plaintiff was entitled to recover, and should have judgment for the balance due on the contract, and plaintiff had a lien, under the conditional sales contract, on Temple Radio Model 8-60, and decreed foreclosure of said contract on said Model 8-60; ordered special execution for the sale thereof; and provided, if the proceeds of the sale were not sufficient to pay the judgment, general execution should issue thereon.

Some complaint is made as to the jurisdiction of the court in that it is urged plaintiff has not made out a case in equity and the remedy should have been at law. In the first place, this question was not raised below, and more than this, it is not an open one in this state. We have repeatedly decided that this question can only be raised by a motion to transfer. See Todd v. State Bank, 182 Iowa 276.

Under the pleadings of the plaintiff, its action is bottomed on the contract for the sale of Temple Radio 8-61 and for the foreclosure of the lien, under its conditional sales contract, on that particular instrument. It does not allege an agreement of substitution of Radio 8-60 for 8-61, but the court gave it a decree for foreclosure of the lien on Radio 8-60. If it had made a case as to foreclosure on Model 8-61, this would not authorize the court to give it a foreclosure on Model 8-60. As

we have heretofore said, plaintiff does not allege and does not prove there was an agreement for substitution.

After the decree had been entered, plaintiff sought to amend its petition, alleging, by way of amendment, that by mutual agreement, Temple Radio 8-60 should be substituted for Temple Radio 8-61, and subsequent thereto, such substitution was made. Passing the question of whether or not such amendment could be filed after the decree had been signed, it could only be filed in an effort to conform the pleadings to the evidence. As we have already held there was no agreement of substitution, the court should not have permitted this amendment to be filed.

Turning now to the merits of the controversy, we have heretofore set out the substantial parts of the testimony. A reference to the contract shows it "warrants against manufacturing defects" and "guarantees local reception only." Without now stopping to elaborate or define the term "local reception" we must say that an instrument which, in the first instance, receives only one station, and that in its immediate vicinity, and such reception is fluctuating, and further fails to separate outside stations and confuses them so they become unintelligible, does not fill the warranties in the contract, and the defendant was justified in returning the first-named instrument, 8-61, to the company.

It follows, therefore, that the plaintiff has not made out a case against the defendant, and when the court ruled otherwise, it erred. It should have dismissed plaintiff's petition.—Reversed.

WAGNER, C. J., and STEVENS, FAVILLE, and DE GRAFF, JJ., concur.