MINNESOTA LOAN AND TRUST COMPANY, Trustee, Appellant, v. JESSIE W. HANNAN et al., Appellees.

No. 41475.

March 14, 1933.

1062

Cobb, Hoke, Benson, Krause & Faegre, and Robertson & Robertson, for appellant.

Wright & Baldwin, George S. Wright, Addison G. Kistle, and Paul E. Roadifer, for appellee Hannan.

Galvin, Byers & Sullivan, for appellee Turner.

DONECAN, J.—The plaintiff, Minnesota Loan & Trust Company, is a corporation organized and existing under the laws of the state of Minnesota, with its principal place of business at Minneapolis, Minnesota. The defendants, Jessie W. Hannan and R. D. M. Turner, are residents of Pottawattamie county, Iowa. On or about the 1st day of November, 1921, the defendant Jessie W. Hannan executed to plaintiff company one hundred and ten notes or bonds aggregating $80,000, with interest coupons attached. Fifty of said bonds were of the denomination of $1,000 each, and sixty of said bonds were of the denomination of $500 each. As security for the payment of said bonds, the defendant Jessie W. Hannan executed to the plaintiff company her mortgage or trust deed upon approximately 2,600 acres of land situated in Brown county, South Dakota.

On the 7th day of February, 1931, plaintiff instituted an action in the circuit court of Brown county, South Dakota, for the fore-

closure of the mortgage or trust deed securing said bonds. A decree was entered in said action of foreclosure on the 21st day of March, 1931, finding the total amount due upon said bonds, interest, taxes, and costs to be $86,548.82, foreclosing the said trust deed, and directing the sale of the land covered by said trust deed. A special execution issued, and the land was sold for $62,000. At the time of such execution sale, the total amount, including accrued costs and interest, was $87,174.84. There was thus a balance of $25,174.84 left unpaid upon the judgment under the decree of foreclosure.

On the 27th day of February, 1931, the plaintiff company filed in the office of the clerk of the district court at Council Bluffs, in Pottawattamie county, Iowa, its petition in equity, alleging the execution and delivery of the bonds and mortgage or deed of trust securing same; that at the time of the execution and delivery of the bonds and trust deed, the defendant Jessie W. Hannan represented to plaintiff that she was the absolute owner of property aggregating more than 2,000 acres, including various tracts of land in Pottawattamie and Harrison counties, Iowa; that, subsequent to the execution of said bonds and trust deed, said defendant Jessie W. Hannan, conveyed the said lands in Pottawattamie and Harrison counties, Iowa, to the defendant R. D. M. Turner; that without the said lands the said defendant, Jessie W. Hannan, is practically insolvent; that the said lands were conveyed to said R. D. M. Turner for a wholly inadequate consideration, and for the purpose of defeating and hindering plaintiff in the collection of the indebtedness represented by said bonds; and that the said defendant, R. D. M. Turner, holds the title to said lands in trust for the use and benefit of said Jessie W. Hannan. Plaintiff asked that judgment be entered against the defendant Jessie W. Hannan in the sum of $83,000, principal and interest; that said conveyances be deemed to be without consideration, in fraud of creditors, null and void, and of no effect; that said conveyances be set aside and Jessie W. Hannan be decreed to be the absolute and unqualified owner of said lands; that said defendant, R. D. M. Turner, be decreed to have no right or interest therein; and that the said judgment on the said bonds, with interest and costs, be declared to be a lien on the said lands. A copy of one of said bonds was set out in said petition, and a copy of the trust deed was attached thereto and by reference made a part thereof.

On May 13, 1931, plaintiff filed an amendment to its petition, alleging that prior to the commencement of this action it had insti-

tuted the said action to foreclose the said trust deed in the circuit court of Brown county, state of South Dakota; that, after the commencement of said action of foreclosure in South Dakota, and prior to the rendering of the decree therein, and prior to the institution of this action, plaintiff had obtained consent and authorization of said South Dakota court in compliance with a statute of that state, authorizing it to commence and prosecute an action against the defendant Jessie W. Hannan in the county of her residence in the state of Iowa, upon the bonds, notes, or debts secured by said trust deed; that a sale under special execution of the land covered by said trust deed was held on April 24, 1931, and said land was sold for $62,000, leaving a balance due on said notes or bonds in the sum of $25,174.84. Plaintiff asked that judgment be rendered in favor of plaintiff and against the defendant Jessie W. Hannan in the sum of $25,174.84, with interest and costs. Copies of said decree of foreclosure, authorization of the state of South Dakota to commence this action, and of the return of the sheriff conducting said sale under said foreclosure, were attached to said amendment and made a part thereof.

On June 3, 1931, defendants filed separate motions to dismiss plaintiff's petition and amendment. These motions were practically identical in form, and alleged in substance that said petition and amendment do not state facts which entitle the plaintiff to any relief; that said petition shows on its face that the plaintiff is not the owner and holder of the bonds sued upon and has no right to maintain this action; that the petition shows that the one hundred and ten bonds have been sold to various parties; that the plaintiff has instituted this action in behalf of the holders of the one hundred and ten bonds which constitute one hundred and ten separate and distinct causes of action; that this action is not for the foreclosure of the mortgage given to secure said one hundred and ten bonds, but plaintiff is seeking to institute in one action what constitute one hundred and ten actions at law; that there is a misjoinder of parties plaintiff and a misjoinder of causes of action; that the petition and amendment fail to show any lien upon said lands in Pottawattamie and Harrison counties, Iowa, as a basis for an action in equity in the matter of a creditor's bill.

On August 25, 1931, the trial court entered its ruling upon said motions in which it overruled the motion to dismiss of the defendant Jessie W. Hannan and sustained the motion to dismiss of the defendant R. D. M. Turner. The record does not show that plaintiff pleaded

over against the defendant Turner, or that any further proceedings were had in the district court of Pottawattamie county, Iowa, as to him.

On August 29, 1931, the defendant Jessie W. Hannan filed her separate answer consisting of three divisions. Division 1 set out as defenses the same matters which had been alleged in her motion to dismiss. Division 2 of said answer admits the corporate capacity of the plaintiff and the residences of the defendants, the execution of the bonds and trust deed, and the commencement of the foreclosure proceeding in South Dakota; alleges that such foreclosure proceedings were not fully completed; that they are still pending in said South Dakota court, and that the plaintiff, under the decree therein, was put in possession of the real estate belonging to the defendant Jessie W. Hannan, and that there are rents and profits of said real estate which will be credited on the debt secured by said mortgage, but that the amount thereof has not been determined and cannot be credited for the reason that said action is pending; denies that there is any sum due plaintiff on the notes and mortgages; denies that the plaintiff is the real party in interest therein; alleges that plaintiff does not own or hold any of said notes or bonds, but that same are owned by various and sundry individuals; that said bonds or notes constitute separate and distinct causes of action against the defendant Jessie W. Hannan; and that this plaintiff cannot maintain this action. In Division 3 said defendant alleges the institution of the foreclosure of the mortgage securing said bonds; that said action is pending and has not been completed; that no accounting has been made of rents and profits of said land; that it is impossible at this time to determine what will be unpaid upon said bonds until said action is fully and finally completed; that by reason of the pendency of said action there is another action pending for the same cause or causes of action, and plaintiff cannot maintain two causes of action, one for the foreclosure of mortgage, and the other on the bonds now owned by plaintiff, at one and the same time, and defendant prays that the petition of plaintiff be dismissed by abatement and that said petition be dismissed as a bar, and that defendant have judgment for her costs.

On September 16, 1931, plaintiff filed its motion to strike the separate answer of the defendant Jessie W. Hannan. The record does not show that any ruling was ever made upon this motion. On September 22, 1931, plaintiff filed its second amendment to petition and

supplemental petition, alleging that practically all of the bonds were sold and negotiated to third persons, as alleged in plaintiff's original petition, but that thereafter all of said bonds were re-negotiated and reassigned and delivered by the holders thereof to the plaintiff, and that plaintiff is now the holder of all of said bonds and in full and complete possession thereof; that said bonds are by their terms all made payable to plaintiff, "said trustee, or to bearer thereof"; and that the plaintiff herein is the holder of said bonds.

On the 9th day of October, 1931, this cause was reached for trial in the trial court. At that time, it appears from the record, the defendant Jessie W. Hannan, through her attorney, objected to proceeding with the trial for the reason that she was not prepared to meet certain matters set up in the second amendment to petition and supplemental petition which was filed on September 22, 1931. After some discussion, in which the court and the attorneys for plaintiff and defendant took part, the trial proceeded. Evidence was offered and introduced by the plaintiff, but no evidence was offered or introduced by the defendant, and the cause was submitted to the trial court. Thereafter, on the 2d day of January, 1932, the court entered the following decree:

"The above cause, having been heretofore fully submitted to the court, and by the court taken under advisement, now comes on for final decision.

"Before trial the defendants objected to going to trial and joining issue as to the amendment to petition and supplemental petition filed by plaintiff on September 22, 1931, and plaintiff announced in open court that the cause would proceed to trial on the issues raised by the original petition, and that the issue raised by said amendment would not be before the court, but that plaintiff would rely upon its rights as set out in the original petition.

"It is hereby ordered by the court, that plaintiff's cause of action be and the same is hereby dismissed at the cost of plaintiff, without prejudice, however, to the right of any individual holder of the bonds or bond to pursue any remedy available to him or them by law. Plaintiff excepts.

"December 24, 1931.

"K. R. Cook, Judge."

From the above decree, the plaintiff appeals to this court.

The briefs and arguments of both appellant and appellee assume a broad range and discuss several questions. These questions, however, may be reduced roughly to the following: First, was there a misjoinder of parties or of causes of action? Second, did the plaintiff have the right to maintain this action as the party named in the bonds and trust deed and as the bearer of the bonds? Third, did the plaintiff have the right to maintain this action as the trustee of an express trust?

█ I. The defendant-appellee contends that plaintiff's cause of action should have been dismissed regardless of the merits of the case, because there was a misjoinder of causes of action and of parties to the action. It is claimed that there was a misjoinder of causes of action, because the plaintiff in its petition and amendment joined a legal cause of action against Jessie W. Hannan upon the bonds with an equitable cause of action against R. D. M. Turner to set aside the conveyances of the lands in Pottawattamie and Harrison counties, Iowa. The equitable cause of action against the defendant R. D. M. Turner to set aside the conveyances was dismissed as to him when the court sustained his motion to dismiss the petition and amendment thereto. This motion of the defendant Turner to dismiss was sustained by the court several weeks prior to the trial. The record does not show that any further pleading was filed by the plaintiff as to the defendant Turner, or that any further proceedings were had in regard to him in the district court. The court, however, did not sustain but overruled the motion to dismiss of the defendant Jessie W. Hannan, and, so far as the record shows, the only proceedings in the district court subsequent to the dismissal as to the defendant Turner were in connection with the cause of action against said defendant, Jessie W. Hannan.

Any claim of misjoinder of causes of action as to the defendants, and of misjoinder of parties defendant, was disposed of by the court when it dismissed the action as against the defendant R. D. M. Turner.

█ The defendant-appellee contends, however, that there still remains a misjoinder of causes of action and of parties to the action as to the plaintiff. Her contention is that the action is brought against the defendant Jessie W. Hannan upon one hundred and ten separate bonds or notes; that there is a separate cause of action on each bond or note, or one hundred and ten separate causes; and that these causes of action should be prosecuted by the eighty-five differ-

ent and separate owners of these bonds or notes. These contentions of the defendant-appellee are bound up with the questions of the plaintiff's right to sue and will be considered in a subsequent portion of this opinion.

II. Plaintiff sued for the balance due upon the one hundred and ten separate notes or bonds executed by the defendant Jessie W. Hannan. These one hundred and ten bonds or notes were in the possession of the plaintiff and were introduced in evidence on the trial of the case in the lower court. Each of the notes or bonds sued upon contains the following provisions:

"No.------------------- $----------------------

"Know All Men By These Presents, That I, Jessie W. Hannan, of Council Bluffs, Iowa, hereby acknowledge myself indebted to The Minnesota Loan and Trust Company, Minneapolis, Minnesota, as Trustee, in the sum of ---------------------- Dollars, ($1000.00 or $500.00 as the case may be), which sum, for value received, I promise to pay to said Trustee, or to the bearer hereof, or in case of registration, to the registered holder hereof, in lawful money of the United States of America, at the office of The Minnesota Loan and Trust Company, at Minneapolis, Minnesota, on the first day of November, 1931, with interest thereon from date until fully paid at the rate of seven and one-half per cent (7½) per annum, payable semi-annually on the first day of May and November of each year, the interest to maturity being represented by appropriate coupons hereto attached, with exchange on New York City, etc.

"In case of default in the payment of any installment of interest upon this bond, or of any of the bonds of the series of which this is one, for a period of thirty (30) days after the same shall have been due and demanded at the office of said Trustee, or in case of default for a like period in any of the terms or conditions of the Trust Deed or Mortgage hereinafter referred to, then the principal of this bond, as well as of all of the bonds of the issue of which this is one, may thereupon be declared due in the manner and with the effect and subject to the conditions provided in said Trust Deed or Mortgage.

"This Bond, but none of the coupons is subject to registration from time to time, at the option of the holder on the books of said Trustee, and if registered shall pass only by a transfer upon such books, unless the last transfer shall have been made and registered

to bearer; in which case it shall again pass by delivery until again registered."

It is stated in each of the notes or bonds that it is payable to Minnesota Loan & Trust Company, Minneapolis, Minnesota, as trustee, *"or to the bearer hereof."* (Italics are writer's.) Each of these bonds also provides' that the bond, but not the coupons, may be registered at the option of the holder on the books of said trustee; that, if so registered, it shall pass only by transfer upon such books, unless the last transfer shall have been registered to bearer, in which case it shall again pass by delivery until again registered.

It appears without dispute in this case that all of these notes or bonds had been sold to various parties, and that the one hundred and ten bonds or notes were owned by about eighty-five different individuals. It further appears that each of these notes or bonds was still owned by the eighty-five parties other than the plaintiff, and that each of them had been redelivered to the plaintiff. It does not appear that any of these bonds had ever been registered and, so far as the record shows, each of these bonds was still payable to the bearer. Plaintiff-appellant contends that this alone entitles it to sue for the amount due upon these notes or bonds, while the defendant-appellee contends that plaintiff cannot maintain this action for the reason that it is not the real party in interest. Section 10967, Iowa Codes, 1927 and 1931, is as follows:

"10967. Real party in interest. Every action must be prosecuted in the name of the real party in interest."

It appears without dispute in this case that the plaintiff-appellant is not the beneficial owner of the notes or bonds sued upon. It has been the uniform holding of this court, however, that a party plaintiff may maintain an action on a note without being the beneficial owner thereof, or without having any beneficial interest therein. It is sufficient if there be a showing of *prima facie* legal title, and the possession of a note is sufficient to establish such *prima facie* legal title. This question was considered and decided in the early case of Riggs v. Price, 3 G. Greene, 334. In that case a note for $35 was made payable to F. A. Chenoweth or bearer. The action was brought by one Riggs. It was objected that the note could only be sued on in the name of Chenoweth and that it was not negotiable. In that case we said:

"True the note in the present case was not assigned by indorsement thereon, nor was such indorsement necessary. By the express terms of the note it was made payable to any person who might be the holder, whether that person should be F. A. Chenoweth or any other person. It is in the alternative. It is to F. A. C., or bearer, hence any holder of the note, any bearer is made the payee—'the person to whom it is made.' Independent of our statute, we believe it to be the uniform practice in the commercial world that a note payable to bearer, may be sued in the name of the holder the same as though it had been assigned to him by indorsement, and as uniform is the doctrine that the possession of a note, payable to bearer, or indorsed in blank is prima facie proof of title. [Bayley v. Taber] 6 Mass. 451; [President, etc., of Northampton Bank v. Pepoon] 11 Mass. 288; [Carroll v. Meeks] 3 Port. [Ala.] 226; [Jackson v. Heath] 1 Bailey [S. C.] 355; [Gage v. Kendall] 15 Wend. 640."

In the case of Farwell v. Tyler, 5 Iowa (Cole), 535, we had to deal with a case where a promissory note was made payable to one D. C. Farwell. Claim was made by the defendant that the note was made for the benefit of M. C. Farwell. Action was brought on the note by D. C. Farwell. In this case, reading at page 539, we said:

"Civil actions are to be brought in the name of the real party in interest, but this is a rule of practice, and is in no wise to affect substantial rights. Code, sections 1676, 1677. In this case, prima facie, the plaintiff is the real party in interest, for he relies upon, and introduces as evidence, a note made payable to himself. The note being thus payable, not being negotiable by delivery, nor assigned, M. C. Farwell could not sue upon it in his own name. If we should grant, therefore, that M. C. Farwell owned the note, and not the plaintiff, we still think the suit was properly brought. But if M. C. Farwell is the party beneficially interested in the debt, the defendant, if he can show this fact, may be let in to any defence he may have against him, though suit is brought in the name of the person having the legal interest in the note."

In Knadler v. Sharp, 36 Iowa 232, reading at page 236, in considering the right of one who was not the beneficial owner to bring an action, we said:

"It is also provided by Revision, section 2757: 'Every action must be prosecuted in the name of the real party in interest, except

as provided in the next section.' This language was first construed, as found in the Code of 1851, section 1676, to mean the party having the legal title or interest. Farwell v. Tyler, 5 Iowa 535. But, afterward, it was held to mean the party having the beneficial interest, as contradistinguished from the mere holder of the legal title. Conyngham v. Smith, 16 Iowa 471. And subsequently it was held that the party holding the legal title of a note or instrument may sue on it though he be an agent or trustee, and liable to account to another for the proceeds of the recovery, but he is open in such cases to any defense which exists against the party beneficially interested; or, the party beneficially interested, though he may not have the legal title, may sue in his own name. Cottle v. Cole, 20 Iowa 481."

In Bigelow v. Burnham, 90 Iowa 300, 57 N. W. 865, 48 Am. St. Rep. 442, we said:

"The note is payable to bearer; it is shown to have been properly delivered to plaintiff; it was in her possession; and possession, alone, of such a note, authorizes the holder to sue thereon."

In Fransham v. Tow Bros., 196 Iowa 1082, reading at page 1084, 196 N. W. 71, 72, we said:

"The note in suit is order paper. It was indorsed in blank. It was in the possession of a person other than the payee. The presumption exists that the person in possession of such instrument is the owner, and possession under such circumstances is sufficient evidence of title to make a prima facie case."

See, also, Cassidy v. Woodward, 77 Iowa 354, 42 N. W. 319; Fear v. Jones, 6 Iowa 169; Brown v. Sharkey and Ross, 93 Iowa 157, 61 N. W. 364; Cress v. Ivens, 163 Iowa 659, 145 N. W. 325; Zion Church v. Parker, 114 Iowa 1, 86 N. W. 60.

It is said in 8 C. J. p. 820, that the "Negotiable Instruments Law expressly provides that the holder of a negotiable instrument may sue in his own name, and it defines the holder as the payee or the indorsee of a bill or a note in possession thereof or its bearer."

Moreover, section 9490, of the Codes 1927 and 1931, provides that:

"An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the

holder thereof. If payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder, completed by delivery."

By the plain provisions of this statute, if an instrument is payable to bearer, it is negotiated by delivery, and such negotiation by delivery makes the transferee the holder thereof.

Section 9511, Codes 1927 and 1931, provides that:

"The holder of a negotiable instrument may sue thereon in his own name and payment to him in due course discharges the instrument."

And section 10968, Codes 1927 and 1931, provides that a "party expressly authorized by statute, may sue in his own name, without joining with him the party for whose benefit the action is prosecuted."

In view of the fact that the notes or bonds sued upon in this case are made payable to the plaintiff or to bearer; that they had all been redelivered to the plaintiff by the owners thereof, and were in plaintiff's possession and introduced in evidence upon the trial in the district court; and, in view of the statutes and authorities above quoted, we see no reason why the plaintiff cannot prosecute this action.

III. In addition to its right to prosecute this action, for the reasons stated in the preceding division of this opinion, we believe the plaintiff has made a sufficient showing to support its right to prosecute this action as the trustee of an express trust.

Section 10968, Codes 1927 and 1931, provides that:

"An executor or administrator, a guardian, a trustee of an express trust, a party with whom or in whose name a contract is made for the benefit of another, or party expressly authorized by statute, may sue in his own name, without joining with him the party for whose benefit the action is prosecuted."

The notes or bonds in this case constitute an agreement to pay the amount named in each of these notes or bonds to the plaintiff, as trustee, or to the bearer; and the notes or bonds refer to the trust deed or mortgage securing same.

It is contended by the defendant-appellee that the rights and duties of the plaintiff, as the trustee named in the bonds and

deed of trust, are confined to the enforcement of the payment of the amount due on the bonds by resorting to the foreclosure and sale of the real estate covered by the trust deed, and that there is nothing in the bonds or deed of trust which authorizes the trustee to prosecute a separate action on the bonds. In support of this contention, the plaintiff cites several cases which have been decided in the federal courts. In all of these cases, however, the decision is based upon the fact that the bonds and/or deed of trust confined the right of the trustee to enforcing the claim for the amount due upon the bonds against the property covered by the deed of trust. In the case at bar, however, the defendant-appellee Jessie W. Hannan in the notes or bonds sued upon acknowledges herself "indebted to the Minnesota Loan and Trust Company, Minneapolis, Minnesota, as trustee, in the sum of ......................... Dollars, which sum, for value received, I promise to pay to said trustee, or to the bearer hereof." Each of these notes or bonds have the provision that in case of default in payment of interest "for a period of thirty days after the same shall have been due and demanded at the office of said Trustee," the principal of all of the bonds "may thereupon be declared due in the manner and with the effect and subject to the conditions provided in said Trust Deed or Mortgage."

Article IV of the trust deed provides that upon a default "in the payment of any installment of interest, principal, taxes, assessments, insurance premiums, or in any of the covenants, agreements, or conditions contained herein, * * * it shall be lawful for said Trustee to declare the whole sum hereby secured immediately due and payable, and proceed to enforce payment thereof, in the same manner as if it had become due by the express terms of said bonds."

Article VI of the trust deed provides that:

"It is further covenanted and agreed by said Grantor that in case said Trustee shall, for any reason, omit to avail itself of any default as aforesaid, such omission shall not prejudice or impair the rights or remedies of said Trustee to avail itself of any other or future neglect or default of said Grantor, and that the remedies in this Mortgage or Deed of Trust specified in case of default *shall not exclude the Trustee, if it shall so elect, from any other legal or equitable remedy* it may be entitled to in the premises; but all remedies herein provided shall be construed as cumulative only." (Italics are writer's.)

Article VIII of the deed of trust provides that:

"It is hereby declared and agreed that it shall be the duty of said Trustee, upon the written request of the holders of thirty-five per cent (35%) of the then indebtedness hereby secured, and upon proper indemnification against costs and expenses, to do each and all of the acts and to execute each and all of the powers by it to be done and executed under the terms and conditions hereof."

It seems quite apparent that, if the only power the trustee had was to enforce the payment of the bonds against the real estate covered by the deed of trust, this instrument would not contain the provision that the remedies specified in the deed of trust, in case of default, should not exclude the trustee from other legal or equitable remedies. So far as the intention of the parties is concerned, there is nothing in either the bonds or the trust deed to indicate an intention that the trustee could not enforce the payment of these bonds personally against the defendant-appellee as well as against the land described in the trust deed securing the payment thereof.

Moreover, there is in this case the further fact that the notes or bonds were all redelivered by the owners thereof to the trustee; that the trustee was in rightful possession thereof; and that, in addition to delivering these bonds to the trustee, the owners expressly authorized such trustee to maintain this action.

It may be objected that the statements which the owners of the bonds gave to the plaintiff in connection with the delivery of the bonds cannot be considered because they are the basis of a new and different cause of action which was excluded from the trial by the agreement of the parties. Whatever agreement the parties may have reached or intended to reach in the beginning of the trial, as to excluding any new issue which may have been raised by the plaintiff's second amendment to petition and supplemental petition, it is quite apparent that they did not intend to exclude from the trial the issue as to the right of the plaintiff to maintain the case as trustee. As the case stood at the beginning of the trial, the plaintiff was suing as trustee. It had in its possession all of the one hundred and ten notes or bonds and the deed of trust. These were all introduced in evidence. Plaintiff also offered and introduced in evidence the statements which the record shows without dispute were signed by each of the individual owners of the bonds or notes and delivered to the plaintiff. The objection to these statements made by defendant-

appellee in the beginning of the trial was that they were immaterial and incompetent under the .agreement as to the issue which 'should be excluded from the trial of the case. There was nothing to prevent the introduction of these statements unless they were the basis of a new issue which the parties had agreed should·be excluded, and the objections made by the attorney for defendant-appellee show ·that the theory upon which he sought to prevent their introduction was that the introduction of these statements constituted "an attempt by said statement to claim as an assignment and as the owner or holder or possessor of the bonds in the name of the Minnesota Loan and Trust Company." One of the statements is as follows:

"December 29th, 1930.

"The Minnesota Loan and Trust Company,

"Minneapolis, Minnesota.

"Gentlemen:

"You are the Trustee under an Indenture made and executed November 1, 1921, by and between yourselves and Jessie W. Hannan of Council Bluffs, Iowa, securing an issue of 7½% Serial Bonds in the aggregate sum of Eighty Thousand Dollars ($80,000.00), which said bonds are due and payable November 1, 1931, and have not been paid, and in which there has been a default in the payment of interest as provided for therein.

"The undersigned, owner and holder of said bonds in the amount of $7,500.00, hereby requests that under the terms of said Indenture you declare all of the outstanding bonds to be due and payable and the total amount of the indebtedness secured by said Indenture to be due and payable, and that you proceed to foreclose the mortgage given to you by said Jessie W. Hannan to secure said bonds, either by action or advertisement, in such manner as you shall deem for the best interests of all concerned, *and that you take such other and further action to collect said indebtedness as may be deemed advisable in your opinion, including .any actions either in state or Federal courts in Iowa or South Dakota against said Jessie W. Hannan personally* and against said Jessie W. Hannan and her brother, one R. D. M. Turner, of Council ·Bluffs, Iowa, to set aside as fraudulent any conveyances made by said ·Jessie W. Hannan to said R. D. M. Turner and any other legal steps or actions which you may deem advisable or necessary to protect the interests of the bondholders under said Indenture, including, without limiting the gener-

ality of the foregoing, the right to' employ attorneys in Minnesota, Iowa, or South Dakota, and the right to pay taxes and insurance necessary to protect and preserve the properties mortgaged to secure said bonds and the further right to bid for said properties at any foreclosure sale thereof an amount which in your opinion correctly reflects the true value of said properties, even though the amounts so bid shall not equal the amount due under the terms of said Indenture.

"We further agree and guarantee that you will be reimbursed for all necessary and reasonable expenses in connection therewith under the provisions of said Trust Indenture.

"Very truly yours, R. R. Todd."
(Italics are writer's.)

The statements are all identical except as to dates, amounts, and names of the signers. These statements do not show any assignment of the notes or bonds. The notes or bonds were delivered to the plaintiff-appellant and by their express terms were made payable to it as trustee or as bearer. These statements, instead of making any assignment or creating any new relation, refer to a relation as trustee already existing. These statements are directed to the plaintiff-appellant and say in the very beginning: "You are the Trustee under an Indenture executed November 1, 1921, by and between yourselves and Jessie W. Hannan," etc.

There appears to have been no objection to these exhibits when finally offered and introduced in evidence. Even if there had been objection, it does not appear that there is anything in these exhibits that would prevent their being introduced upon the trial of the issue as to the right of the plaintiff to bring this action as trustee. The plaintiff is named as trustee in both the bonds and deed of trust. The bonds are made payable to plaintiff-trustee or to bearer. The deed of trust does not expressly limit the rights of the plaintiff as trustee to enforcement of the debt against the mortgaged security, but does expressly state that the remedies specified in the deed of trust "shall not exclude the Trustee from any other legal or equitable remedy it may be entitled to in the premises." The bonds were all placed in the hands of the plaintiff by the owners thereof. The trust deed was also in its possession. The written statements signed by the owners of the bonds are directed to plaintiff and expressly state, referring to the trustee, that "You are the Trustee." Each of the written state-

ments expressly authorizes the plaintiff, as such trustee, to foreclose the mortgage "and to take such other and further action to collect said indebtedness as may be deemed advisable in your opinion, including any actions either in the state or Federal courts in Iowa or in South Dakota against said Jessie W. Hannan personally."

The bonds and deed of trust clearly created a relation of trust in which the plaintiff was the trustee for the owners of the bonds. These bonds and trust deed indicate an intention and understanding on the part of the bondholders and the plaintiff that plaintiff, by the terms of the bonds and deed of trust, was authorized to act for the beneficiaries of the trust in other ways than in merely foreclosing the trust deed against the property securing the debt. The written statements of the owners did not transfer or assign the bonds to the plaintiff. The bonds were transferred and were rightfully in the hands of the plaintiff by delivery from the owners, and this gave plaintiff the legal title thereto. The statements signed by the owners of the bonds did, however, expressly authorize the plaintiff to sue the defendant-appellee directly upon these bonds. These statements show the understanding and intention of the bondholders to be that the plaintiff is holding the bonds as trustee and, if as such trustee plaintiff did not already possess the authority to sue defendant directly upon the bonds, these statements did not assign or transfer any right to the bonds, but merely enlarged the plaintiff's powers as trustee in reference thereto.

Considering the provisions of the bonds, of the trust deed, and of the written statements, in the light of all the other facts and circumstances in evidence in this case, it seems clear to us that it was the understanding and intention of the bondholders and the plaintiff that there existed an express trust, of which the plaintiff was the trustee, and that it had the authority to sue in this case as such trustee.

IV. If the plaintiff, as we hold, has the right to prosecute this action either as the holder or bearer of the bonds, or as the trustee of an express trust, it can do so because of its rights as such holder or bearer or as such trustee, without regard to the beneficial ownership. If this be true as to one of these bonds, it is true as to all of them, because they are all in the possession of the plaintiff and the plaintiff is the holder or bearer or the trustee as to all of them. The cause of action, either as holder or bearer or as trustee, is not that of the several beneficial owners. The cause of action

belongs to the plaintiff, as the holder or bearer or as trustee. The cause of action on each of the bonds being that of the plaintiff against the same defendant Jessie W. Hannan, there is no misjoinder of parties plaintiff or of causes of action.

V. Defendant-appellee also argues that there can be no recovery by the plaintiff for any balance due upon the bonds, for the reason that it appears that a receiver was appointed by the South Dakota court for the lands described in the deed of trust; that there is nothing to show how much may be recovered by the receiver from the rents and profits of the lands; and that it is, therefore, impossible to tell what balance is due upon the bonds. It appears, however, from the evidence introduced by plaintiff, that whatever amount may be collected by the receiver during the period of redemption will not be sufficient to meet the taxes and other expenses connected with the land and the receivership. In view of this evidence, and in view of the fact that the defendant-appellee would be entitled in the receivership proceedings to receive any balance of the rents and profits after the payment of all expenses, we do not feel that the defendant will be prejudiced in any way as the result of the receivership proceedings.

VI. Some complaint is made that the cause of action as to defendant Jessie W. Hannan, if any, was an action at law which she had a right to have tried to a jury. The action as brought was in equity. Had the defendant Jessie W. Hannan desired to have this action transferred to the law side of the court, she could have made a motion to that effect. What ruling the court would have entered upon such motion, if it had been filed, we need not determine. So far as the record shows, she filed no such motion and thus waived any right she might have had to have the cause transferred for trial to the law side.

It is our opinion that the plaintiff had the right to prosecute this action, and that the trial court erred in dismissing its petition against the defendant-appellee. The decree of the trial court is therefore reversed, and the cause remanded for the entry of a decree in conformity with this opinion.—Reversed.

EVANS, ALBERT, UTTERBACK, ANDERSON, and KINTZINGER, JJ., concur.

KINDIG, C. J., and STEVENS and MITCHELL, JJ., dissent.

KINDIG, C. J. (dissenting)—I am sorry that I am not able to agree with the majority opinion. It is said by the majority that the appellant was authorized to bring the suit in question on the several bonds because these bonds are payable to bearer. With that fact as a premise, the majority then conclude that under the cases cited by them, the presumption arises that such bearer is the owner and holder of the bonds. Assuming that the cases cited are authority for the proposition that such presumption may arise under facts supporting it, yet in this case such presumption, if it originally existed, later was entirely overcome by the facts in the record, and therefore the cases cited and relied upon are not applicable.

Here the authority imposed upon the appellant by the various bondholders to bring suit is evidenced by separate written instruments. These written instruments entirely overcome the presumption relied upon by the majority that the appellant is a holder or owner of the bonds. The written instruments conferring the authority upon the appellant to bring suit do not amount to an indorsement or an assignment of the respective bonds. Hence, with those written instruments in evidence, it is manifest that the appellant had no other interest in the bonds than that given it by the various instruments. These instruments did not confer any property in the bonds on the appellant. All that was accomplished by the instruments was an authority to bring suit on the respective bonds. Such authority, however, did not extend so far as to authorize the appellant to bring suit in its own name. Under the written instrument relied upon, there was no more authority granted to the appellant to bring suit in its name than there would be granted to an attorney by an ordinary letter to bring suit in his name, rather than that of his client, on a note inclosed with said letter.

Consequently, whatever presumption may have existed in appellant's favor, under the cases named by the majority, was entirely overcome as the facts of the case developed and the instruments relied upon were offered in evidence. Those instruments did not authorize the appellant, as before indicated, to bring suit on each bond in its own name, but rather the only authorization contained in the instruments was that the appellant might bring suit in the names of the holders of the individual bonds, at the latter's expense. Moreover, there is nothing in the instruments relied upon for authority to enable the appellant to bring one suit on the various bonds held by separate persons. Whatever authorization there was in the

instruments relied upon contemplated a separate suit for each of the holders of the various bonds. Each bondholder in a separate instrument conferred authority upon the appellant to bring suit for him upon the bond or bonds which he owned. So, the instruments, when considered separately or collectively, create no situation authorizing a joint suit, as distinguished from several suits. Under the circumstances, the parties are left in respect to bringing a joint suit where the law places them without the instruments relied upon.

Therefore, I respectfully dissent from the discussion and conclusion reached by the majority.

Mr. Justice STEVENS and Mr. Justice MITCHELL join in the dissent.