L. B. PATTERSON, Appellee, v. CARL G. BINGHAM, Appellant.

No. 43322.

JUNE 19, 1936.

REHEARING DENIED OCTOBER 2, 1936.

Stipp, Perry, Bannister & Starzinger, and Donald D. Holdoegel, for appellant.

Miller, Miller & Miller, and Pike, Sias, Zimmerman & Butler, for appellee.

DONEGAN, C. J.—Prior to the first day of May, 1929, L. B. Patterson was the owner of 237 shares of stock, being all the

stock outstanding, in the Des Moines Printers Exchange, an Iowa corporation engaged in printing and printers' supplies. At that time Carl G. Bingham was the president of the Bingham Company, a corporation, with headquarters at Chicago, Illinois, which was engaged in the business of selling printers' supplies. Prior to May 1st negotiations had been conducted between Mr. Patterson and Mr. Bingham in regard to the purchase by Mr. Bingham of all the outstanding stock of the Des Moines Printers Exchange, and on that date they entered into an agreement evidenced by two written instruments. The first of these instruments states that Bingham has purchased from Patterson 237 shares of stock in the Des Moines Printers Exchange; that an audit had been made of the business of the Des Moines Printers Exchange; that the corporation was the owner of a certain lease; that upon delivery of the shares thus sold there would be no debts or liabilities of the corporation outstanding; that the seller simultaneously with the delivery of this agreement shall furnish to the purchaser certificates representing fifty shares of the capital stock of said company, owned by said seller, to be delivered in escrow with the Valley National Bank of Des Moines, Iowa, conditioned to indemnify and save and keep harmless the corporation and the purchaser, and their respective successors, distributees, and assigns, from liability, damage or expense by reason of any debt, obligation or liability of the corporation, other than or in excess of those set forth in last mentioned report of said accountants; said shares of stock to be so held in escrow for a period of five years and then redelivered to the seller, provided the seller shall have procured a release or discharge of any such debt, obligation, or liability, and delivered same to the purchaser. This instrument contained a further provision in regard to the seller not engaging in similar line of business.

The evidence shows that after Patterson and Bingham had signed the instrument above referred to, they proceeded to have dinner together, and during the dinner hour a discussion arose as to the fifty shares which the agreement provided should be placed in escrow. As all of the 237 shares of stock had been purchased by and transferred to Bingham, without provision for the certificate representing the fifty shares to be held in escrow, it was agreed that a further instrument in writing should be drafted to take care of this omission and the purchase of fifty additional shares which Patterson agreed to make. Upon their

return to the place of business of the Des Moines Printers Exchange, the following instrument in writing was prepared and signed by the parties:

"IT IS AGREED by and between Carl G. Bingham, Purchaser, and L. B. Patterson, Seller, under agreement executed today between them relative to 237 shares of stock in the Des Moines Printers Exchange, and relative to the Seller engaging in any business of making or selling printers' supplies of any kind in territory specified therein, upon the terms specified therein, that upon the termination of the connection of the Seller with the Des Moines Printers Exchange or with said Purchaser, as employee of said Des Moines Printers Exchange or of said Purchaser, within ten years from the date hereof, the Purchaser will, upon demand, pay to said Seller the par value of the shares of stock then owned or held by or for the Seller in said corporation, but not to exceed ten thousand dollars par value; said shares not exceeding ten thousand dollars to be transferred to said Purchaser upon payment of said par value to the Seller; said sum to be paid promptly upon demand in case of termination of such connection after five years from this date, or five years from the date of this agreement upon the termination of such connection before the expiration of five years from this date.

"It is agreed that the other agreement above referred to is executed simultaneously with this agreement, and that the Seller executed said other agreement in reliance upon the execution of this agreement by both the Seller and the Purchaser."

Pursuant to the latter agreement fifty shares of the stock to be held in escrow were issued in the name of Patterson, for which he executed his check for $5,000, and on May 7th thereafter an additional fifty shares of stock were issued to Patterson, for which an additional check for $5,000 was executed by him. The fifty shares of stock which were to be placed in escrow were left with the lawyer who drew up the agreement, and it appears that they were never placed in the custody of the bank named in the agreement. Some time after the agreements evidenced by the above writings had been entered into, it appears that Patterson desired to dispose of the fifty shares which he had purchased. as an investment, and he corresponded with Bingham in regard thereto. In reply to one of Patterson's letters Bingham stated that he was not in a position to buy the stock at that time but

referred to one McShane, who was then connected with the corporation, and said:

"If McShane can take half or all of your stock now, I have no objection to his doing so, and will relinquish any claim or option I may have on this stock by reason of the agreement we entered into."

Pursuant to this suggestion made by Bingham, Patterson got in touch with McShane and sold him these fifty shares of stock. This left Patterson owning only the fifty shares for which the certificate had been issued in his name and left with the lawyer to be placed in escrow. Thereafter, Patterson at various times wrote to Bingham suggesting that he purchase these remaining fifty shares. In a letter written January 3, 1934, Bingham stated that he did not intend to buy the stock and that the agreement entered into on May 1, 1929, was not enforcible against him. In answer to this letter Patterson wrote Bingham that he expected him to go through with the agreement on May first next (which was five years from the date of the agreement) and purchase the stock at the agreed price of $5,000. Again, on April 11, 1934, Bingham wrote Patterson a letter in which he stated:

"Don't count on my buying your stock on May 1. I don't want to invest any more in the business, and our purchase arrangement does not obligate me to buy, any more than it obligates you to sell. The other terms of our purchase contract I think are enforcible. Anyway, they have been lived up to except that you did not deposit your stock with the bank as a guaranty against claims and liabilities over and above those listed. Fortunately, none developed and will not now."

In another letter written by Bingham under date May 17, 1934, after speaking of a prospect who might be interested in purchasing the business, he said:

"Don't go to any lawsuit over your stock. I am sure we can come to an amicable adjustment. The contract is one-sided in that it purports to bind me to buy but does not bind you to sell, and you did sell part of what you had.

"However, we are neither of us interested in the legal phases of it. What we both want I am sure is a fair and equitable adjustment and I know we can make that between ourselves.

In the meantime, however, I think it would be advisable to dispose of it and there are several parties who are interested in it. I will keep you posted as to developments."

Nothing resulted from these efforts to secure a purchaser and on October 5, 1934, a special meeting of the stockholders was held and it was voted to liquidate the corporation and the board of directors was empowered and directed to declare a liquidating dividend of all the assets of the corporation in exchange for the complete redemption and cancellation of all the company's outstanding stock. Patterson, although present at the meeting, did not vote, and the evidence shows that at this meeting he tendered the fifty shares of stock to Bingham and told Bingham that he considered him the owner. Following this, Patterson filed this action in equity on October 20, 1934. After alleging the execution of the two written instruments of May 1, 1929, the ownership by plaintiff of one hundred shares of stock pursuant thereto, the sale of the fifty shares of such stock not held in escrow with the consent of defendant, the offer and tender of the remaining fifty shares to defendant in accordance with the agreement contained in the written instruments, and the refusal of defendant to accept said stock and pay therefor, the plaintiff prayed that it be determined that he had performed all the terms of the written agreements; that the terms of said agreements be confirmed, established and enforced; that should the defendant fail to complete same by paying plaintiff the sum of $5,000 with interest from May 1, 1934, and costs, or such other sum as the court might prescribe, that judgment be entered in favor of plaintiff and against defendant for $5,000, with interest from May 1, 1934, and costs; and that plaintiff have such other and further relief as may be just and equitable. To this petition the defendant filed an answer admitting the signing of the instruments, but denying all other allegations of the petition. In an amendment to his answer he alleged that the first of said written instruments was wholly without consideration and void in that no money, promise or thing of value was given by plaintiff or received by defendant therefor, and no benefit moved to the defendant and no detriment was suffered or agreed to be suffered by the plaintiff. For reply plaintiff stated that the two written instruments were a part of the same transaction; that the original sale by plaintiff of his 237 shares, which

was for 80 per cent of its par value; the warranty by him of the audit of the books, of the validity of 237 shares of stock and of the lease of the premises occupied by the corporation; the purchase of and payment for the stock bought by him from defendant; and his agreement not to engage in a rival business for ten years, constituted a sufficient consideration.

On March 4, 1935, the case was tried to the court as an equitable action, and on March 26, 1935, a decree was entered by the court in favor of the plaintiff and ordering that the plaintiff have judgment for $5,000, with interest at six per cent from May 1, 1934, together with costs of the action. The decree further ordered that the plaintiff execute an assignment to defendant of the certificate for fifty shares of stock, which certificate was tendered to the defendant at the trial of this case, and deliver same to the clerk of the court, that the clerk of the court hold the certificate and assignment for the benefit of the defendant, and that upon the payment in full of the judgment entered, with interest and costs, the clerk of the court deliver said certificate of stock and said assignment to the defendant. From this decree the defendant appeals.

I.   Defendant's first contention is that the relief asked and granted is the specific performance of a contract for the sale of corporate stock, and that the corporate stock here involved is not such that specific performance can be decreed by a court of equity. While this action was brought in equity and the language of the petition is such that it might be said to ask for a decree for specific performance of the contract by which appellant agreed to repurchase the stock, and the decree entered might be construed to be a decree ordering specific performance, we do not think the language of either the petition or the decree is such that it must be said that no other relief was asked or granted. The prayer of the petition, after asking that it be determined that plaintiff has fully performed the agreements contained in the two written instruments, and that the agreements be established and enforced, further asked, in case defendant failed to pay plaintiff $5,000 with interest and costs, or such other sum upon such other terms as the court may prescribe, "that judgment be entered herein in favor of the plaintiff and against the defendant for Five Thousand Dollars ($5,000.00), with interest at the rate of six per cent (6%) per annum from May 1, 1934,

and costs and *that the plaintiff have such other and further relief as may be just and equitable in the premises.*"

While it may be conceded that courts of equity do not have jurisdiction to enforce specific performance of contracts for the sale of corporate stock, where the stock is not peculiar in character, does not involve control of the corporation, and is readily obtainable by anyone desiring to buy the same, and that the stock involved in this case is not of such exceptional nature, we do not think the conclusion urged by the appellant must necessarily follow. The fact that the action was brought in equity does not necessarily preclude the court from granting the relief that might be granted in a law action, where no request is made to transfer to the law docket, and no such request was made in this case. Sections 10944, 10945, 10946, and 10949, Code of Iowa, 1931; Beach v. Youngblood, 215 Iowa 979, 247 N. W. 545; Minnesota Loan & Trust Co. v. Hannan, 215 Iowa 1060, 247 N. W. 536; Des Moines Music Co. v. Lindquist, 214 Iowa 117, 241 N. W. 425; Burmeister v. Hamann, 208 Iowa 412, 226 N. W. 10; Baxter v. Baxter, 204 Iowa 1321, 217 N. W. 231; Johnson v. Home Mut. Ins. Assn., 191 Iowa 535, 181 N. W. 244; Todd v. State Bank, 182 Iowa 276, 165 N. W. 593, 3 A. L. R. 971; In re Estate of Heaver, 168 Iowa 563, 150 N. W. 698; Cress v. Ivens, 155 Iowa 17, 134 N. W. 869.

We think the petition in this case was sufficiently broad to give the court jurisdiction to enter the decree and judgment from which appellant has appealed. This is not a case where the plaintiff was asking to enforce specific performance of a simple contract for the sale of corporate stock. This is a case where the plaintiff had purchased corporate stock from the defendant under an agreement by the defendant that he would re-purchase this stock from plaintiff at a certain price and at a certain time, should the plaintiff so demand. That plaintiff did demand that defendant re-purchase the stock according to the terms of the agreement, and tendered the stock to the defendant, is fully supported by the evidence. And that, under such circumstances, the plaintiff was entitled to a judgment against the defendant for the full amount of the purchase price named in the agreement is, we think, fully sustained by the authorities. The rule is stated in 14 C. J. 689, par. 1061, as follows:

"Where the contract fixes the price of repurchase, the pur-

chaser in electing to resell may recover the price so fixed, and is not limited to damages measured by the difference between the market value of the stock at the time of the breach and the sum named in the contract, * * *.''

In Campbell v. Woods, 122 Mo. App. 719, 99 S. W. 468, 470, plaintiff, in an action at law, tendered stock which he had purchased from defendant and sought to recover the price at which defendant had agreed to re-purchase same. In sustaining judgment entered for the full amount of such purchase price, the court said:

''It is true that the rule amounts, practically, to specific performance of contracts. But that is no argument against its utility or propriety, but, on the contrary, the best of reasons for its enforcement. The nearer the rules of law can be made to conform to those of equity the more effective and just will be the judgments of the courts.''

See, also, Moench v. Hower, 137 Iowa 621, 115 N. W. 229; Reitz v. Brouhard, 198 Iowa 37, 199 N. W. 420; Calvert v. Mason City Loan & Inv. Co., 219 Iowa 963, 259 N. W. 452; Vrba v. Krall, 187 Iowa 1221, 175 N. W. 4; Echternach v. Moncrief, 94 Kan. 754, 147 P. 860; Lyons v. Snider, 136 Minn. 252, 161 N. W. 532; Klein v. Johnson, 191 Mo. App. 453, 178 S. W. 262; Boynton v. Woodbury, 101 Mass. 346.

II. The next proposition presented by the appellant is that specific performance of a contract will not be decreed by a court of equity where it is impossible to perform the contract according to its terms. The evidence showed that, subsequent to the commencement of this action but prior to the trial thereof, the period of the corporation's existence had expired, and that, prior to the expiration of the corporation's existence, a liquidating dividend had been voted. It is urged that the corporate existence having expired and proceedings for winding up its affairs and distributing its assets having been commenced, the fifty shares of stock here involved could not be transferred upon its books, and that a decree for the specific performance of the contract by a transfer of the stock upon the books of the corporation was, therefore, futile. The difficulty in appellant's position, as we view it, is that he is here assuming that the only relief asked by the plaintiff and the only relief granted by the decree entered

was the specific performance of the contract. As we have already said in Division I of this opinion, the allegations of the petition and the relief asked therein were sufficiently broad to sustain the decree entered, and it cannot be said that the only relief asked and granted was that of specific performance. The delay in executing the contract until after the corporation had ceased to exist was in no way due to any act of the appellee, but was caused by the refusal of the appellant to perform the contract entered into by him. If there should be any diminution in the value of the stock purchased by the appellant, or any difficulties attending the transfer of such shares upon the books of the corporation, the appellant has only himself to blame therefor. But, even though this stock was not transferred on the books of the corporation, and, even though it had become impossible to make such transfer at the time the decree was entered, the assignment and delivery of the certificate representing these shares of stock was sufficient to transfer to the appellant all of the appellee's interest in the assets of the corporation which he would have received had the certificate been assigned and delivered to him and transferred on the books of the corporation prior to the expiration of the corporate period of existence. In Andrew v. Peoples State Bank, 211 Iowa 649, 654, 234 N. W. 542, 545, this question arose in connection with the transfer of stock on the books of the corporation after its charter had expired, and this court said:

"A corporate official has no authority to issue stock after the expiration of the charter. Neither has a stockholder power thereafter to transfer his stock, in a statutory sense. Where such a transfer of stock is made in form, equity will treat it as an equitable assignment of all the net interest of the assignor in the corporate property after winding up its affairs."

See, also, Courtright v. Deeds, 37 Iowa 503; Hershire v. First National Bank, 35 Iowa 272; Farmers & Merchants Bank v. Wasson, 48 Iowa 336, 30 Am. Rep. 398; Des Moines National Bank v. Warren County Bank, 97 Iowa 204, 66 N. W. 154.

III. It is next contended by appellant that, where a suit is brought in equity for specific performance and the petition does not pray for damages or alternative relief, the petition should be dismissed where the evidence is not such as to entitle the plaintiff to a decree for specific performance, and that it is

not necessary for the defendant to ask for a transfer of the case to the law side of the court for an award of damages. Again, the appellant takes the position, which we have already held in the preceding portion of this opinion is not sustained by either the pleadings or the decree in this case, that the only relief asked for and the only relief granted was the equitable relief of a decree of specific performance. What already has been said in the preceding divisions of this opinion sufficiently indicates our view that the relief asked and granted was much broader than specific performance only.

IV. Finally, it is contended by the appellant that equity will not specifically enforce a contract where the obligations of the contract are not mutual, and it is argued that, because the appellant in this case could not, under the contract, have compelled the appellee to sell the stock in question to the appellant, the contract is, therefore, lacking in mutuality and cannot be enforced in equity. That such contract may not have been such that it could be enforced by a specific performance in equity, however, does not dispose of this case. As we have already stated, the relief asked and the relief granted by the court was not merely that of specific performance. The petition asked and the decree entered a judgment against the appellant for the amount which he had agreed to pay for stock which was tendered to and delivered to him in accordance with the contract. Although the agreement under which the appellant obligated himself to purchase the fifty shares of stock here involved is contained in the second writing signed by the parties on May 1, 1929, this writing itself refers to the first writing entered into that same day, in which the appellant purchased from the appellee the entire 237 shares of stock then outstanding in the Des Moines Printers Exchange, and in referring to the first writing this second writing states:

"It is agreed that the other agreement above referred to is executed simultaneously with this agreement, and that the seller executed said other agreement in reliance upon the execution of this agreement by both the seller and the purchaser."

It is evident, therefore, that the two writings made up but one transaction; that the entire 237 shares, being all of the outstanding stock of the corporation, were sold to the appellant by appellee; that the appellant, being the owner, resold the stock

here involved to the appellee, so that it might be held in escrow as security for any indebtedness that might arise or loss that might occur because of the inaccuracy of the audit which had been made of the affairs of the corporation; and that, having performed this purpose, the appellant obligated himself to re-purchase it and to pay to the appellee the full purchase price of $5,000, which appellee had paid him therefor. There was ample consideration to support the contract and the undertaking of the appellant to re-purchase this stock on the terms contained in the agreement. There is no question of misrepresentation and no amount is involved other than the full purchase price. The stock was tendered and delivered in accordance with the terms of the contract, and, the appellant having failed and refused to pay for same, the appellee was entitled to the judgment which was entered for the contract price, with interest and costs, in accordance with the finding and decree of the district court.

The decree and judgment of the district court is, therefore, affirmed.—Affirmed.

All Justices concur.